STATE of Wisconsin, Plaintiff-Respondent,

v.

Thomas A. DODD, Defendant-Appellant.†

Court of Appeals

*No. 93–2519–CR. Submitted on briefs April 12,
1994.—Decided May 18, 1994.*

(Also reported in 518 N.W.2d 300.)

†Petition to review denied.

560

561

On behalf of the defendant-appellant, the cause was submitted on the brief of *Leonard D. Kachinsky, Kachinsky Law Offices* of Neenah.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general and *Diane M. Nicks*, assistant attorney general.

Before Anderson, P.J., Nettesheim and Snyder, JJ.

ANDERSON, P.J.    Thomas A. Dodd appeals from a judgment of conviction for the physical abuse of a child, a violation of § 948.03(2)(b), STATS., and from an order denying his postconviction motion. On appeal, he argues that the trial court erred by refusing to instruct the jury on the parental discipline privilege, § 939.45(5), STATS. Because we conclude that Dodd is not a "parent" within the plain meaning of the statute, we affirm.

The following facts were related during the testimony at trial. Dodd lived with Julie G. and her three children. Dodd and Julie were not married and Dodd was not the father of any of the children. One of Julie's children, nine-year-old Brian G., had attention deficit disorder, for which he took medication. The medication needed to be taken with meals or else Brian would become sick. Because Brian did not like to eat, a house rule existed where before school, Brian would have to bathe, eat and get dressed. Julie testified that at times he could be difficult to control.

On the morning of October 9, 1992, Julie asked Dodd to supervise her three children and a visiting

cousin. Julie was unable to do so because she was suffering from severe asthma. Because of her asthma, she sometimes asked Dodd to make meals, discipline the children, and supervise the children's tasks around the house. Although Julie was not directly supervising, she could see into the kitchen where the children were and noticed that Brian was not eating. She instructed Dodd to "go spank him and make him sit down and eat." Dodd responded by hitting Brian three times with a belt. Julie testified that she did not see or hear the blows. Afterwards Brian complained about his back to Julie; she looked and noticed a red mark. When she suggested that they "put a wash rag on it," Brian stated that it was fine and went off to school.

While at school, a teacher and the principal examined Brian's back. He told them about the incident and the authorities were notified. Dale Drake, a social worker, testified that Brian's back exhibited one highly visible four-inch mark and two less visible one and one-half inch marks.

Dodd was charged with and convicted of one count of physical abuse of a child in violation of § 948.03(2)(b), Stats. Prior to that, the court granted the State's motion in limine to bar Dodd from raising the defense of parental discipline privilege pursuant to § 939.45(5), Stats. The court held that a change in § 939.45(5) restricted the class of people who could claim the privilege of parental discipline. According to the trial court, Dodd could have claimed the privilege under the prior law which applied to a "parent or a person in the place of a parent," *see* § 939.45(5), Stats., 1985-86, but the present law precluded him from maintaining this defense. The court also denied Dodd's postconviction motion which was based in part on this same issue. Dodd appeals.

The main issue of this appeal is whether Dodd, the live-in boyfriend of the child's mother, is a "person responsible for the child's welfare" who may use the parental discipline privilege in his defense pursuant to § 939.45(5), STATS. The interpretation of § 939.45 presents a question of law which we determine de novo. *See State v. Eichman*, 155 Wis. 2d 552, 560, 456 N.W.2d 143, 146 (1990). The objective when interpreting a statute is to discern the intent of the legislature, with the language of the statute itself as the primary source. *Id.* In determining the plain and unambiguous meaning, the court must construe any single phrase or word in the statute in light of the statute as a whole. *Town of Sheboygan v. City of Sheboygan*, 150 Wis. 2d 210, 213, 441 N.W.2d 752, 753 (Ct. App. 1989).

The defense that certain criminal conduct is privileged is provided in § 939.45, STATS. The statute states in relevant part:

> **Privilege.** The fact that the actor's conduct is privileged, although otherwise criminal, is a defense to prosecution for any crime based on that conduct. The defense of privilege can be claimed under any of the following circumstances:
>
> . . . .
>
> **(5)** . . . (b) When the actor's conduct is reasonable discipline of a child by a *person responsible for the child's welfare* . . . . [Emphasis added.]

The phrase a "person responsible for the child's welfare" is defined by § 939.45(5)(a)3:

> "Person responsible for the child's welfare" includes the child's parent or guardian; an employe of a public or private residential home, institution or agency in which the child resides or is confined or that

provides services to the child; or any other person legally responsible for the child's welfare in a residential setting.

Dodd first argues that the term "parent" as defined in Wisconsin's common law is broad enough to include anyone who " 'share[s] a mutual love and affection with a child and who *suppl[ies] the child support and maintenance, instruction, discipline and guidance.*' " *See State v. Deer,* 125 Wis. 2d 357, 362, 372 N.W.2d 176, 180 (Ct. App. 1985) (emphasis in original) (quoting *Solberg v. Metropolitan Life Ins.*, 50 Wis. 2d 746, 753, 185 N.W.2d 319, 323 (1971)). Dodd contends that he fits this definition because there was evidence that he took part in child care and other responsibilities while living with Julie's family.

*Deer* is inapposite to the case before us. *Deer* is a child enticement case under the former § 940.32(2), STATS., 1985-86. Dodd's "definition" of "parent" is actually the court's discussion of the *obligations* associated with the word "parent." The court did not say that whoever fulfills these roles is a parent; it merely concluded that those who are parents have an obligation to fulfill these roles.

Dodd also relies upon *State v. Evans,* 171 Wis. 2d 471, 492 N.W.2d 141 (1992). Dodd contends that *Evans* requires us to interpret the phrase and the statute which defines it as broadly and inclusive as possible. He argues that a broad definition of "parent" includes not only biological parents, but anyone who stands *in loco parentis* to a child. In *Evans,* our supreme court was asked to interpret the same phrase as we are asked today: "person responsible for the child's welfare." However, *Evans* was a child neglect case and was interpreting that phrase in the context of chapter 948, STATS., instead of chapter 939, STATS. The court's opin-

ion states that "one can infer that the legislature intended to make the definition of 'parent' in sec. 948.01(3) as all inclusive as possible *in the context of the child neglect statute.*" *Evans,* 171 Wis. 2d at 480, 492 N.W.2d at 145 (emphasis added).

We decline to categorically conclude that the privilege statute should be interpreted as inclusively as possible. Nevertheless, even reading the statute broadly, we cannot conclude that the term "parent" includes those persons *in loco parentis.* This court often looks to a recognized dictionary to define terms not defined by statute. *See State v. Seigel,* 163 Wis. 2d 871, 886, 472 N.W.2d 584, 590 (Ct. App. 1991). We acknowledge that certain dictionary definitions of "parent" include persons *in loco parentis. See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1641 (unabr. 1976). However, we must also avoid interpreting a statute in such a way as to render any portion surplus language. *Kelley Co. v. Marquardt,* 172 Wis. 2d 234, 250, 493 N.W.2d 68, 76 (1992). If "parent" is interpreted as Dodd suggests, it would render other terms in § 939.45(5)(a)3, STATS., surplusage. There would have been no need for the legislature to specifically state that "guardian[s]" and "person[s] legally responsible for the child's welfare in a residential setting" are accorded the privilege, *see id.,* because those persons would have already been included in "parent." Therefore, we hold that the term "parent" as used in § 939.45(5)(a)3 does not include those *in loco parentis.*

Although we find the statute unambiguous, a historical analysis makes clear that Dodd is not entitled to the parental discipline privilege defense. We may undertake historical analysis to reinforce and demon-

strate that a statute is plain on its face. *See State v. Martin,* 162 Wis. 2d 883, 897 n.5, 470 N.W.2d 900, 905 (1991). Prior to 1987 when the present version of § 939.45(5)(a)3, STATS., was enacted, the statute provided that the privilege was available when the conduct was "reasonable discipline of a minor by his parent or a person in the place of a parent." *See* § 939.45(5), STATS., 1985-86. By replacing "person in the place of a parent" with a specific list of persons and the "catch-all" category of "any other person legally responsible for the child's welfare in a residential setting," the legislature limited the availability of the privilege to those with *legal* duties to care for the child. Dodd's relationship with Brian did not engender any such legal responsibilities.

*By the Court.*—Judgment and order affirmed.