STATE of Wisconsin, Plaintiff-Respondent,

v.

Quincy FERGUSON, Defendant-Appellant.†

Court of Appeals

*No. 94–2639–CR. Submitted on briefs May 3, 1995.—Decided June 6, 1995.*

(Also reported in 536 N.W.2d 116.)

†Petition to review granted.

For the defendant-appellant the cause was submitted on the briefs of *Marla J. Stephens*, first assistant state public defender.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *James M. Freimuth*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Schudson, JJ.

SCHUDSON, J. Quincy Ferguson appeals from the trial court judgment and order denying his postconviction motion, following his convictions for two drug offenses and bail jumping. He challenges only that part of his sentence ordering him to pay $105 to the Wisconsin State Crime Laboratory. He argues that the trial court had neither inherent nor statutory authority to order such a payment. We conclude, however, that the trial court did have statutory authority to order payment to the crime laboratory under § 973.06(1)(c), STATS., as "[f]ees and disbursements allowed by the court to expert witnesses."[1]

Following a two day court trial, Ferguson was convicted of possession with intent to deliver cocaine base while armed within one-thousand feet of a public park, possession with intent to deliver THC (marijuana) while armed, and bail jumping. The trial court sentenced Ferguson to three years in prison without parole for the cocaine offense, one concurrent year in

---

[1] Because we resolve this case on a statutory basis, we need not consider the issue of the trial court's inherent authority. *See Gross v. Hoffman*, 227 Wis. 296, 300, 277 N.W. 663, 665 (1938) (only dispositive issue need be addressed).

prison for the marijuana offense, and time served for bail jumping. The trial court also imposed a $1000 fine, suspended Ferguson's driver's license for six months, ordered that the $615 cash found on Ferguson when he was arrested at the crime scene be donated to the DARE [Drug Abuse and Resistance Education] program of the Milwaukee Metropolitan Drug Enforcement Unit,[2] and ordered "costs, assessments and surcharges and restitution." Although the judgment of conviction specified only that the "court costs" including "witness fees" were "to be determined," apparently the sentence ultimately required Ferguson to pay $105 to the crime lab—the amount that the State had recommended as "restitution" to the state crime laboratory. Ferguson then brought his postconviction motion to vacate that part of his sentence requiring the $105 payment.

Although the trial court did not specifically address the issue of the crime lab payment at sentencing, it did so at the hearing on Ferguson's postconviction motion. Denying Ferguson's motion, the trial court explained, in part:

> [Section] 973.06(1)(c) which deals with disbursements for expert witnesses would include the costs of testing those materials by the State Crime Laboratory. They have to do this in this case. They have to be prepared to come into court and testify to that extent, that that kind of, if you want, [sic] time allocation and cost is something that should be reimbursable to that expert. You don't just bring that expert in and say, now, what do you think from looking at that substance. They would have to actually perform this test; and so, the Court, if they

[2] The trial court's judgment specifies a DARE payment of $610, but the court subsequently ordered a payment of $615.

hadn't performed the test, would have required them to complete this test, and I think that they're entitled to be reimbursed for cost [sic] of completing that test. It's a standardized cost in most cases.

■

Whether § 973.06(1)(c), STATS., provides authority to order payment to the state crime laboratory is an issue of first impression. Because this issue requires interpretation of a statute, it presents a question of law subject to our independent review. *State v. Dodd*, 185 Wis. 2d 560, 564, 518 N.W.2d 300, 301 (Ct. App. 1994). When interpreting a statute, our objective is to discern the legislature's intent with the statutory language as the primary source. *Id.* If the statutory language is clear on its face, it should be construed according to its plain meaning. *Id.* We conclude that the clear language of § 973.06(1)(c) provides trial courts the sentencing authority to order defendants to pay the state crime laboratory for the "fees and disbursements" of expert witnesses.[3]

■

"The clear and unambiguous language of [section 973.06] provides for the taxation of costs against the defendant only if the costs fit within one of the categories enumerated in the statute." *State v. Peterson*, 163 Wis. 2d 800, 803-804, 472 N.W.2d 571, 573 (Ct. App. 1991). Whether payment to the state crime laboratory

---

[3] Section 973.06(1)(c), STATS., provides:

**(1)** Except as provided in s. 93.20, the costs taxable against the defendant shall consist of the following items and no others:

. . . .

(c) Fees and disbursements allowed by the court to expert witnesses. Section 814.04(2) shall not apply in criminal cases.

Section 814.04(2), STATS., provides for witness fees for expert witnesses *who testify*.

is a payment fitting within the specific, enumerated statutory category of "fees and disbursements . . . to expert witnesses" presents a question of law. *See id.* at 802, 472 N.W.2d at 573.

Ferguson argues that this court's recent decision in *State v. Evans*, 181 Wis. 2d 978, 512 N.W.2d 259 (Ct. App. 1994), precludes the trial court from ordering payment to the crime laboratory. We disagree. Although the trial court's order required payment of "costs" to the crime laboratory presumably to cover the costs of the investigation into Evans's drug crimes, the issue on appeal was solely and specifically whether the trial court had authority, under § 973.20(1), STATS., to order the defendant to reimburse the Metro Narcotics Unit for $120 in "buy money"—funds used by undercover police to buy drugs—as a condition of probation. *Id.*, 181 Wis. 2d at 979 & n.1, 512 N.W.2d at 259 & n.1. The instant case, by contrast, deals neither with "buy money" nor with the trial court's authority to order a probation condition under § 973.20(1). Thus, *Evans* does not control this case.[4]

Ferguson also argues that § 973.06(1)(c), STATS., is inapplicable to his case because "[t]here were no expert witnesses from the crime lab . . . at the preliminary examination or at the trial." Ferguson fails, however, to offer any authority that would require a witness's actual appearance or testimony in order to qualify for the trial court's allowance of expert witness fees and

---

[4] The State conceded on appeal that the trial court had no authority to order repayment of "buy money" as "costs" under § 973.06(3), STATS., and we did not address that issue. *State v. Evans*, 181 Wis. 2d 978, 981, 512 N.W.2d 259, 260 (Ct. App. 1994). Even the most generous reading of *Evans* allows for no interpretation that in any way could encompass the issue in this case relating to expert witnesses under § 973.06(1)(c), STATS.

disbursements.[5] Indeed, there would be no logical basis for such a rule. As the State argues:

> [T]he fact that Mr. Popovich did not testify in person at trial makes him no less a "witness" for purposes of trial and for purposes of taxable costs under sec. 973.06(1)(c), Stats. The term "expert witness" in sub. (1)(c) of § 973.06, Stats., clearly contemplates those experts whose development of evidence is used in the prosecution in question"whether on behalf of the State or the defense"regardless of whether the "expert witness" actually testifies in person.[6]

We agree. Moreover, § 973.06, STATS., specifically exempts the award of expert witness fees from the requirement, under § 814.04(2), STATS., that the witness has testified. We thus reject Ferguson's argument and conclude that the trial court properly exercised its discretion in allowing fees and disbursements to expert witnesses under § 973.06(1)(c).[7]

*By the Court.*—Judgment and order affirmed.

---

[5] In fact, under § 970.03, STATS., at a preliminary hearing, "[t]he expert who made the findings need not be called as a witness."

[6] In this case the State listed Gregory Popovich from the state crime lab on its witness list. Ferguson stipulated that Popovich was an expert qualified to perform state crime laboratory analysis for the identification of controlled substances.

[7] Finally, Ferguson asserts in his reply brief that the crime laboratory is entitled to expert witness fees only under § 165.79 (2), STATS. We note that this statute applies to use of crime laboratory expert witnesses in civil cases; it does not apply here.