STATE of Wisconsin, Plaintiff-Respondent,

v.

Jorge B. SOSTRE, Defendant-Appellant.

Supreme Court

*No. 94–0778–CR. Oral argument November 28, 1995.—Decided January 24, 1996.*

(Also reported in 542 N.W.2d 774.)

For the defendant-appellant there were briefs and oral argument by *Ruth S. Downs*, assistant state public defender.

For the plaintiff-respondent the cause was argued by *Diane M. Nicks*, assistant attorney general, with whom on the brief was *James E. Doyle*, attorney general.

DONALD W. STEINMETZ, J.  The issue in this case is whether a live-in boyfriend, who is a volunteer caretaker of a child, is a "person . . . responsible for the welfare of [a] child," and thereby subject to the penalty enhancer found in Wis. Stat. § 948.03(5) (1993-94).[1] We hold that a live-in boyfriend can be a "person . . . responsible for the welfare of [a] child," if he was used by the legal guardian of the child as a caretaker for the child. In such situations, it is appropriate for the penalty enhancer found in Wis. Stat. § 948.03(5) to be applied.

The facts in this case are not in dispute. On November 10, 1991, defendant Jorge B. Sostre was charged with one count of child abuse for intentionally injuring three-year-old Joseph F. On November 12, Irene Lundin, a juvenile crisis worker, interviewed Joseph. The child told her that the defendant hit him and pointed to his head, his stomach and his buttocks.

---

[1] Wis. Stat. § 948.03(5) provides as follows:

    **(5)**  PENALTY ENHANCEMENT; ABUSE BY CERTAIN PERSONS. If a person violates sub. (2) or (3) and the person is responsible for the welfare of the child who is the victim of the violation, the maximum term of imprisonment may be increased by not more than 5 years.

411

Asked where he was when this took place, the child brought the crisis worker into his bedroom and pointed to his bed and said "Poppy hit me."

The defendant's trial began on February 22, 1993. At trial, Sandra F., Joseph's mother, testified that she and Sostre had known each other about four or five years and lived together for about three years. Sandra F. said that during this time the defendant did everything that she did with regard to taking care of the children, including feeding and bathing them. She claimed that Joseph considered the defendant his father or stepfather, called him "Poppy," and that until the child abuse incident, Joseph had had a normal father-son relationship with the defendant.

Sandra then testified that on November 8, 1991, she left Joseph in the defendant's exclusive care. She rejoined her son a few hours later and discovered bruises on Joseph's face, stomach and buttocks. The defendant told her that he did not know how the child had gotten hurt. Sandra took Joseph to the hospital to treat his injuries.

Two physicians also testified for the State: Dr. Harlow LaBarge and Dr. James Concannon. Dr. LaBarge testified that during his October 24, 1991, examination of Joseph, he observed numerous older bruises on the child. He also found numerous acute injuries, including injuries to the back and abdomen, the left side of the head, the right side of the head and the top of the head. Dr. LaBarge opined that the injuries he observed on the body of Joseph were indicative of child abuse.

Dr. Concannon testified that the child told him that "Poppy" hit him and indicated that the blows were both with fists and with an open hand during the November 8, 1991, incident. The child also indicated

that he had been struck about the face, the back, the butt, the penis and the belly. The doctor found the following acute injuries: bruising where the rib cage ends, along the right cheek and upper eyelid, petechiae on both cheeks of the face, and reddened areas on the buttocks. Dr. Concannon found a pattern to the injuries on the rib cage and cheek that was consistent with a slap with an open hand and which indicated more than one blow. It was his opinion, to a reasonable degree of medical certainty, that the injuries were consistent with intentional trauma and rose to the level of abuse.

At the trial, the defendant denied abusing Joseph. However, he admitted that he cared for Joseph and that he had what could be characterized as a parental relationship with Joseph while he was living with Sandra. He also admitted that all of Joseph's injuries occurred while he had the child in his exclusive custody.

A jury found the defendant guilty of physical abuse of Joseph F. pursuant to Wis. Stat. § 948.03(2)(b) (1993-94).[2] He was sentenced to eight years in prison, which were stayed, and was placed on five years probation with certain conditions, including the service of one year in jail. The eight-year stayed sentence included a penalty enhancement of three years as required by Wis. Stat. § 948.03(5).

After the trial, the defendant moved for either a reduction of the sentence imposed or, alternatively, a new trial on the issue of the defendant's responsibility for the welfare of the child. The circuit court for Kenosha County, Michael S. Fisher, Judge, denied this motion, holding that the defendant's relationship with

---

[2] Wis. Stat. § 948.03(2)(b) provides as follows:

    (b)   Whoever intentionally causes bodily harm to a child is guilty of a Class D felony.

Joseph created a situation where the defendant became a "person . . . responsible for the welfare of [a] child" under Wis. Stat. § 948.03(5). The defendant appealed this holding to the court of appeals. The court of appeals, citing due process concerns raised by a possible conflict between our decision in *State v. Evans*, 171 Wis. 2d 471, 492 N.W.2d 141 (1992), and its decision in *State v. Dodd*, 185 Wis. 2d 560, 564, 518 N.W.2d 300, 301 (Ct. App. 1994), certified the case to this court pursuant to Wis. Stat. § 809.61 (1993-94). Review was accepted.

The interpretation of a statute and the application of a statute to an undisputed set of facts are both questions of law. *See Ynocencio v. Fesko*, 114 Wis. 2d 391, 396, 338 N.W.2d 461 (1983). This court reviews such question de novo without deference to the trial court or the court of appeals. *See id.*

The ultimate goal of this court in interpreting a statute is to give effect to the legislature's intent. *See State ex rel. Parker v. Sullivan*, 184 Wis. 2d 668, 679, 517 N.W.2d 449 (1994). The first step in this process is to look to the plain language of the statute itself. *See id.*

The phrase "person . . . responsible for the welfare of [a] child" found in Wis. Stat. § 948.03(5) is defined by Wis. Stat. § 948.01(3).[3] One category of persons included in this definition is those people who are

---

[3] Wis. Stat. § 948.01(3) provides as follows:

**(3)** "Person responsible for the child's welfare" includes the child's parent; guardian; foster parent; treatment foster parent; an employe of a public or private residential home, institution or agency; other person legally responsible for the child's welfare in a residential setting; or a person employed by one legally responsible for the child's welfare to exercise temporary control or care for the child.

"employed by one legally responsible for the child's welfare to exercise temporary control or care for the child." Wis. Stat. § 948.01(3). One of the common meanings of the word "employed" is to "engage the service of" or "to make use of." Random House Unabridged Dictionary (2nd ed. 1993). Under these facts, it seems clear that the mother made use of the services of the defendant, or engaged the services of the defendant, in order to take care of her child when it was necessary for her to be away. In other words, the defendant was clearly "employed" by a person "legally responsible" for a child to "care for that child."

It is true that the term "employed" is usually equated with economic payment for services. The existence of more than one common meaning for the word "employed" creates an ambiguity in the statute which should be construed so as to uphold the intent of the legislature. This court recognized in *Evans*, 171 Wis. 2d at 480, that the legislature's implicit intent in drafting Wis. Stat. § 948.01(3) was to "broadly define the category of persons responsible for a child's welfare." This finding was based upon the statute's remedial purpose of combatting the evils of child abuse, especially abuse by people who are entrusted with the child's care. By broadly construing the word "employed," our opinion gives effect to this intent.

Although postulated by the court of appeals as a possible problem, we find no conflict between our decisions in this case and *Evans* and the court of appeals' decision in *Dodd*. It is true that all three decisions interpret the same language. It is also true that *Dodd* interprets the phrase "person responsible for [a] child's welfare" in a limited manner while this decision and *Evans* interpret the same language much more

broadly. There are, however, a number of reasons why this difference in interpretation is not only appropriate, but necessary.

First, and most obviously, the language interpreted in *Dodd* is found in a completely different chapter of the Wisconsin Statutes than the language interpreted by this decision and *Evans*. The court of appeals in *Dodd* explicitly distinguished *Evans* on this basis. *See Dodd*, 185 Wis. 2d at 565-66. This case and *Evans* deal with the interpretation of Wis. Stat. § 948.01(3). This subsection is found in ch. 948 which is titled "Crimes Against Children." The entire chapter is specifically aimed at remedying the problems of child abuse. *Dodd*, however, interprets Wis. Stat. § 939.45(5) (1993-94).[4] This section is found in ch. 939 which is titled "Crimes - Generally." Wisconsin Statute § 939.45's purpose is to discuss the basic statutory privileges which a defendant may invoke when he has been charged with the commission of a crime. The parent-child discipline privilege is one of these. There is no reason why these two distinct chapters need to be read together.

---

[4] Wis. Stat. § 939.45(5) (1993-94) provides as follows:

(5)(a)   In this subsection:
1.   "Child" has the meaning specified in s. 948.01 (1).
. . .
3.   "Person responsible for the child's welfare" includes the child's parent or guardian; an employe of a public or private residential home, institution or agency in which the child resides or is confined or that provides services to the child; or any other person legally responsible for the child's welfare in a residential setting.
(b)   When the actor's conduct is reasonable discipline of a child by a person responsible for the child's welfare. Reasonable discipline may involve only such force as a reasonable person believes is necessary. It is never reasonable discipline to use force which is intended to cause great bodily harm or death or creates an unreasonable risk of great bodily harm or death.

Second, Wis. Stat. § 939.45(5) sets forth a different definition for the phrase "person responsible for [a] child's welfare" than does Wis. Stat. § 948.01(3). Wisconsin Statute § 939.45(5) explicitly limits the application of its definition to Wis. Stat. § 939.45(5)(a) and (b). Furthermore, this court has recognized that the definition of this phrase found in Wis. Stat. § 948.01(3) is also "self-contained" and should be interpreted independently from other chapters. *Evans*, 171 Wis. 2d at 480. In fact, our decision in this case relies upon a portion of the definition in Wis. Stat. § 948.01(3) which is not even found in Wis. Stat. § 939.45(5). It is not unreasonable for the legislature to wish to define the same language differently in separate statutory chapters. Here, it has done so specifically and deliberately.

█

Finally, the sections must be interpreted differently in order to fully realize the legislature's intent of remedying the evils of child abuse. The legislature determined that it was especially concerned about abuse by people who children, by necessity, must rely upon for their physical well-being. It sought to alleviate this concern by limiting the application of the child discipline privilege, while at the same time broadening the scope of people deemed to be in a special relationship with a child and therefore subject to a penalty enhancer. These actions are clearly within the plenary power of the legislature.

█

When a word used in a statute is ambiguous, it should be construed so that it fulfills the intent of the legislature as that intent is expressed in the statute as

a whole.[5] As such, the trial court correctly concluded that the penalty enhancer of Wis. Stat. § 948.03(5) was applicable to the defendant, Jorge B. Sostre.

*By the Court.*—The judgment and order of the Kenosha County Circuit Court are affirmed.

---

[5] We decline to pass judgment today on the dicta in *State v. Evans*, 171 Wis. 2d 471, 480, 492 N.W.2d 141 (1992) which concluded that "the category of persons responsible for a child's welfare may include classes of persons in addition to those spelled out in sec. 948.01(3)." The facts of this case do not present a situation where a new class of persons needs to be created; the defendant falls squarely within one of the specifically enumerated classes found in the statute itself.