STATE of Wisconsin, Plaintiff-Respondent,

v.

Marketta A. HUGHES, Defendant-Appellant.†

Court of Appeals

*No. 2004AP2122–CR. Oral argument May 17, 2005.
—Decided June 14, 2005.*

2005 WI App 155

(Also reported in 702 N.W.2d 87.)

† Petition to review denied 8-25-05.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *John T. Wasielewski* of *Wasielewski & Erickson*, Milwaukee. There was oral argument by *John T. Wasielewski*.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Michael C. Sanders*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general. There was oral argument by *Michael C. Sanders*.

Before Wedemeyer, P.J., Curley and Kessler, JJ.

¶ 1. WEDEMEYER, P.J.   Marketta A. Hughes appeals from a judgment entered after she pled guilty to charges of child neglect resulting in death, intentional physical abuse of a child, and reckless physical abuse of

389

a child, contrary to WIS. STAT. §§ 948.21(1), 948.03(2)(b) and 948.03(3)(b) (2003–04).[1] Hughes also appeals from an order denying her postconviction motion, wherein she sought to withdraw her plea to the child neglect charge. She claims that, as a matter of law, she cannot be considered a "person responsible for the [victim's] welfare," which was the second element of the child neglect charge. Accordingly, she asks this court to allow her to withdraw her plea on that charge.[2] Because we reject Hughes's claim that she cannot be considered a person responsible for the victim's welfare, we affirm the judgment and order.

## BACKGROUND

¶ 2. On April 2, 2003, April Gooden asked Etter Hughes to care for Gooden's one-year-old child, Bryan A., because Gooden was being evicted from her apartment. Etter agreed. Etter lived with her two children, Marketta, age 17, and her younger sister, Adreana. Etter's nineteen-year-old sister, Equiller Hughes, also lived with Etter. During the two-week time period within which Bryan was living in the Hughes home, Marketta was asked by Etter to assume a shared responsibility for the child's welfare. Marketta admitted this fact.

¶ 3. On April 15, 2003, Etter noticed that Bryan's hands were swollen, that he had a burn mark on his hand, and that he also had red dots on his forearm. Later that day, she noticed that Bryan's head was very hot, he began to look cross-eyed, and had diarrhea. He

---

[1] All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

[2] Hughes does not challenge the convictions for intentional physical abuse of a child or reckless physical abuse of a child.

started to move in strange motions and then passed out. Etter then called 911, but Bryan died before paramedics arrived. The cause of death was "blunt force trauma about the entire body, which with the culmination of all the injuries caused the child's death."

¶ 4. Marketta admitted to striking Bryan repeatedly during the time he lived with the Hugheses. Specifically, she recounted that on April 5, she struck him twenty times on the thigh really hard; that on April 7, she struck him ten times on his right arm; and that on April 10–12, she pulled him by the ears and attempted to lift him by his ears. On April 13, Marketta grabbed Bryan by his right arm and spun him around until she heard a popping noise in his arm.

¶ 5. Equiller admitted to repeatedly mistreating Bryan because he got on her nerves. She struck him on the buttocks, legs and arms. On April 14, Equiller stated that she was upset with Bryan and grabbed him by the arms, yanking him off the ground. She heard his arms snap and dropped him to the ground. The next day, Equiller and Marketta noticed that Bryan's arm was injured. They reported this to Etter, but no medical attention was sought until the 911 call.

¶ 6. Marketta was originally charged with first-degree reckless homicide, but the charges were later amended, reducing the first-degree reckless homicide charge to child neglect resulting in death. At the plea hearing, the prosecutor supplemented the facts in the complaint to provide a factual basis for the plea:

[A]round the beginning of April [Marketta's mother] Etter Hughes [with whom] she lived . . . took custody of Brian A[.] from Brian A[.]'s mother.

That at times Etter Hughes delegated responsibility for the welfare of Brian A[.] to Marketta Hughes

391

and Marketta Hughes did assume the responsibility of the welfare of Brian A[.] and that on April 15th in the year 2003 Marketta Hughes realized that Brian A[.] was injured rather severely because of the obvious injuries to the arm that she failed at that time to take immediate action in order to help Brian A[.] remedy the pain and the injuries to the arm and I believe that her intentionally doing this is a factual basis which would establish her intentional contribution to the neglect of the child that resulted in his death.

¶ 7.   Defense counsel acknowledged that Marketta certainly was a person responsible for the child's welfare, although she was not solely responsible. The court reviewed the elements of the child neglect charge with Marketta. With regard to the second element of neglecting a child resulting in death, the following exchange occurred:

THE COURT:   The second element would be that you were a person responsible for the welfare of Brian A[.]. I am reading from the jury instruction . . . .

You weren't the only person, but over the course of this time frame from roughly April 2nd to roughly April 15th you were a person responsible for his welfare; is that correct?

THE DEFENDANT:   Yes, sir.

¶ 8.   Marketta then pled guilty. She was sentenced to fourteen years with six years' initial confinement and eight years' extended supervision. Postconviction, Marketta filed a motion seeking to withdraw her plea to the child neglect charge on the basis that, as a matter of law, she cannot be a "person responsible for the welfare of the child." The trial court denied the motion. She now appeals.

## DISCUSSION

¶ 9. The issue in this case is whether Marketta was a person responsible for the welfare of Bryan. She contends that because she is not identified within the definition section of WIS. STAT. § 948.01(3) and because she was only seventeen years old at the time, she cannot be a person responsible for Bryan's welfare. The State responds that neither the statutory language nor Marketta's age results in a conclusion that Marketta was not a person responsible for Bryan's welfare. We agree.

¶ 10. This case arises following the trial court's refusal to allow Marketta to withdraw her guilty plea. A defendant who seeks post-sentencing plea withdrawal must establish by clear and convincing evidence that denying his or her motion to withdraw his or her plea will result in a manifest injustice. *State v. Thomas*, 2000 WI 13, ¶ 16, 232 Wis. 2d 714, 605 N.W.2d 836. A trial court's decision whether to allow plea withdrawal is discretionary and will be upheld as long as the trial court considered the pertinent facts, applied the correct law and reached a reasonable determination. *State ex rel. Warren v. Schwarz*, 219 Wis. 2d 615, 635, 579 N.W.2d 698 (1998); *State v. Black*, 2001 WI 31, ¶ 9, 242 Wis. 2d 126, 624 N.W.2d 363.

¶ 11. Here, Marketta claims that the manifest injustice resulted because she was told by everyone around her that she was a person responsible for the welfare of Bryan. She contends that it was not until after judgment was entered that she was informed that she could not legally satisfy the definition of a person responsible for the welfare of a child. The trial court

determined that Marketta did satisfy the legal defini-
tion of a person responsible for the welfare of a child
and therefore her claim of manifest injustice fails. We
agree.

¶ 12.  Marketta challenges her conviction for ne-
glecting a child, which is found at WIS. STAT. § 948.21(1),
and provides:  "Any person who is responsible for a
child's welfare who, through his or her actions or failure
to take action, intentionally contributes to the neglect
of the child is guilty of a Class A misdemeanor or, if
death is a consequence, a Class D felony." The phrase
"person who is responsible for a child" is not defined in
the statute. However, this phrase is defined in the
definitions section of chapter 948 and provides:

> **(3)** "Person responsible for the child's welfare"
> includes the child's parent; stepparent; guardian; foster
> parent; treatment foster parent; an employee of a
> public or private residential home, institution or
> agency; other person legally responsible for the child's
> welfare in a residential setting; or a person employed by
> one legally responsible for the child's welfare to exercise
> temporary control or care for the child.

WIS. STAT. § 948.01(3). Marketta argues that she does
not fall into any of the categories delineated in the
statute. The trial court disagreed, ruling that Marketta
was a "voluntary caretaker" in that she had been
employed by her mother to exercise temporary care for
Bryan. Thus, Marketta would be included in the last
category of the statutory list under § 948.01(3).

¶ 13.  In reaching its decision, the trial court relied
on *State v. Sostre*, 198 Wis. 2d 409, 542 N.W.2d 774
(1996), wherein the supreme court held that a live-in
boyfriend can be a person responsible for the welfare of
a child in his role as a voluntary caretaker. *Id.* at 411. In
*Sostre*, the boyfriend had been asked by the child's

mother to take care of the child while the mother was away. *Id.* The court ruled that, under these circumstances, the boyfriend fell into the last delineated category of Wis. Stat. § 948.01(3), because he was employed by a person legally responsible for a child to care for the child. *Id.* at 415.

¶ 14. Marketta's attempts to distinguish *Sostre* are unavailing. Here, Marketta's mother, Etter, was the person legally responsible for Bryan. She agreed to be his guardian until the end of April. Etter then engaged Marketta to provide child-care services for Bryan. While Marketta was in charge of caring for Bryan, she most definitely was a person responsible for his care.

¶ 15. We are further not persuaded by Marketta's contention that because she was not eighteen years old, she cannot be considered a responsible person. There is no indication that the statutory language requires a person to be eighteen years old in order to satisfy the definition. In fact, the legislative history reveals that the legislature specifically removed a requirement that a person be eighteen years old in order to fall under the statute. Wisconsin Stat. § 947.15 (1987–88) specifically applied to persons eighteen years of age or older. When the statute was revised in 1987, however, the legislature removed the age restriction. The modification by the legislature was logical. With the age restriction, all babysitters under the age of eighteen would not be considered responsible for the care of children entrusted to them. Similarly, any sixteen- or seventeen-year-old employees of private residential agencies would not be considered responsible persons.

¶ 16. We conclude that the plain language of the statute makes clear that a seventeen-year-old employed by a parent to care for the parent's child can be a person responsible for the welfare of the child. The record

reflects that Marketta freely chose to assume responsibility for the welfare of Bryan at her mother's request. Thus, Marketta became a voluntary caretaker of Bryan and, as such, she was a person responsible for his welfare.

*By the Court.*—Judgment and order affirmed.