COURT OF APPEALS
DECISION
DATED AND FILED

January 25, 2022

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2020AP1066-CR**

STATE OF WISCONSIN

Cir. Ct. No. 2017CF2842

IN COURT OF APPEALS
DISTRICT I

STATE OF WISCONSIN,

PLAINTIFF-RESPONDENT,

V.

TASHARD JAVON BLACK,

DEFENDANT-APPELLANT.

APPEAL from a judgment and an order of the circuit court for Milwaukee County: JEFFREY A. KREMERS and JEAN M. KIES, Judges. *Affirmed*.

Before Donald, P.J., Dugan and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1  PER CURIAM. Tashard Javon Black appeals a judgment of conviction and an order denying postconviction relief.[1]  A jury found him guilty of two counts of physical abuse of a child and one count of child neglect.  He claims that the State presented insufficient evidence to support the conviction for child neglect and that a new factor warrants a modification of his three sentences.  We reject his claims and affirm.

## Background

¶2  On June 10, 2017, K.P. brought her eight-week-old son, Z.B., to the hospital several hours after he was scalded by hot water.  A physician diagnosed Z.B. with burns over his entire face, extending into his ears and onto his scalp.  He also had burns on his lower abdomen, penis, and scrotum.  A further examination revealed that he had multiple fractured ribs and a fractured clavicle that were all in the process of healing.

¶3  Black, K.P.'s live-in boyfriend, gave several statements to police regarding Z.B.'s injuries.  As relevant here, Black acknowledged that he was not Z.B.'s biological father but he felt that K.P. and her infant were his family and his responsibility.  He admitted that on June 10, 2017, he gave Z.B. a bath and held his face and genitals under hot water because he was crying.  Black also admitted that he and K.P. delayed seeking any medical treatment for Z.B. after the scalding

---

[1] The Honorable Jeffrey A. Kremers presided over the trial and sentencing proceedings in this matter and entered the judgment of conviction.  We refer to Judge Kremers both as the trial court and as the sentencing court.  The Honorable Jean Marie Kies presided over the postconviction proceedings and entered the order denying postconviction relief.  We refer to Judge Kies as the circuit court.

although the infant had visible injuries. Black further admitted that in early May 2017, he became frustrated with Z.B. and squeezed him too hard.

¶4 The State charged Black with two counts of physical abuse of a child, one based on the bone fractures that Z.B. sustained in May 2017, and the other based on the burns that Z.B. sustained on June 10, 2017. The State also charged Black, as a party to a crime, with one count of child neglect based on the alleged delay in seeking medical treatment for Z.B.'s burns on June 10, 2017.

¶5 The case proceeded to a jury trial. The jury heard testimony from a physician regarding the nature of Z.B.'s injuries, and the jury heard Black's recorded statements to police. Black did not testify or present any evidence. His theory of defense was that Z.B.'s injuries occurred accidently. The jury found Black guilty on all counts.

¶6 At sentencing, the State sought a seventeen-year term of imprisonment and in support emphasized the gravity of Z.B.'s injuries, Black's delay in seeking treatment for those injuries, and Black's refusal to fully embrace his responsibility for the harm that Z.B. suffered. Black sought a term of probation, citing his remorse and horrific childhood. He explained that he had suffered at the hands of an abusive and neglectful mother and then was placed in foster care. He said that his childhood trauma had led to a variety of mental health problems, including psychoses and post-traumatic stress disorder, and that he had been prescribed medication that ultimately proved insufficient to control his conditions. Black reminded the trial court that he had no prior criminal record, and he urged the trial court to view him primarily as a person in need of treatment for mental health disorders.

¶7     In response to the parties' sentencing arguments, the trial court acknowledged Black's difficult childhood and his lack of a criminal record. The trial court found, however, that "all those really terrible things that happened in [Black's] life, the way [he] grew up, the foster family [he] went through, and everything else done to [him,] ... all of those things have, in [the trial court's] view actually nothing to do with what [Black] did to [Z.B]." The trial court went on to recognize that Black had treatment needs, but it found that "the seriousness of the offense[s] just really overwhelms everything else." The trial court imposed an aggregate term of fourteen years and six months of imprisonment bifurcated as eight years and six months of initial confinement and six years of extended supervision.

¶8     Black moved for postconviction relief, alleging that a new factor warranted sentence modification. In support of the claim, he submitted a report from a psychologist summarizing psychological research regarding the effects of exposure to traumatic childhood experiences. The report reflected that such exposure increases the risk of juvenile and adult psychopathology, and that "those who have experienced childhood physical trauma, sexual abuse, and neglect are significantly more likely to be perpetrators of criminal violence, child physical and sexual abuse and intimate partner violence."

¶9     The circuit court denied postconviction relief, concluding that the psychologist's report did not constitute a new factor and, even assuming that the report could be deemed a new factor, the report did not demonstrate that sentence modification was warranted. Black appeals, renewing his claim for sentence modification and additionally challenging the sufficiency of the evidence to support his conviction for neglecting a child.

**Discussion**

¶10 We begin with Black's challenge to the sufficiency of the evidence supporting his conviction for child neglect.[2] Whether evidence was sufficient to support a verdict is a question of law that we review *de novo*. *See* ***State v. Smith***, 2012 WI 91, ¶24, 342 Wis. 2d 710, 817 N.W.2d 410. In conducting that review, "we give deference to the jury's determination and view the evidence in the light most favorable to the State." ***State v. Long***, 2009 WI 36, ¶19, 317 Wis. 2d 92, 765 N.W.2d 557. We reverse only if the evidence is so lacking in probative value and force that no jury acting reasonably could have concluded, beyond a reasonable doubt, that the defendant was guilty. *See* ***State v. Poellinger***, 153 Wis. 2d 493, 507, 451 N.W.2d 752 (1990). "If more than one inference can be drawn from the evidence, we must adopt the inference that supports the conviction," *see* ***Long***, 317 Wis. 2d 92, ¶19, and we may not overturn the verdict if there is any possibility that the jury could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, *see* ***Poellinger***, 153 Wis. 2d at 507.

¶11 Our standard of review is the same whether the evidence is direct or circumstantial. *See* *id.* at 501. Convictions may be supported solely by circumstantial evidence, and we recognize that circumstantial evidence may be as strong if not "stronger and more satisfactory than direct evidence." *See* *id.*

---

[2] The judgment of conviction reflects that Black stands convicted of child neglect as a party to a crime. The jury, however, was not instructed on party to a crime liability, and the jury's verdict did not include a finding that Black was guilty as a party to a crime. Accordingly, the jury found that Black committed the crime of child neglect as a direct actor. *See* ***State v. Brown***, 2012 WI App 139, ¶14, 345 Wis. 2d 333, 824 N.W.2d 916. Neither Black nor the State, however, has suggested that the judgment of conviction should be amended. We observe that a person who directly commits a crime is a party to the crime. *See* WIS. STAT. § 939.05(1)-(2)(a) (2019-20). All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

¶12     In this case, Black claims that the evidence was insufficient to prove that he was guilty of neglecting a child in violation of WIS. STAT. § 948.21(1)(b) (2015-16).  Before the jury could find him guilty of that offense, the State was required to prove beyond a reasonable doubt that:  (1) Z.B. was younger than eighteen years of age; (2) Black was a person responsible for Z.B.'s welfare; (3) Black intentionally contributed to the neglect of Z.B.; and (4) Z.B. suffered bodily harm as a consequence of Black's intentionally contributing to Z.B.'s neglect.  *See id.*; *see also* WIS JI—CRIMINAL 2150A (May 2009).[3]  On appeal, Black disputes only whether the State proved that he was a person responsible for Z.B.'s welfare.  Accordingly, we do not further discuss the other three elements.  *See **Schlieper v. DNR***, 188 Wis. 2d 318, 322, 525 N.W.2d 99 (Ct. App. 1994) (explaining that a party cannot complain if we take an undisputed proposition as conceded).

¶13     A person is responsible for a child's welfare within the meaning of WIS. STAT. § 948.21(1)(b) (2015-16), if, as relevant here, the person is either legally responsible for the child's welfare or "employed by one legally responsible for the child's welfare to exercise temporary control or care for the child."  *See* WIS. STAT. § 948.01(3).  The parties agree that Z.B.'s mother, K.P., was legally responsible for Z.B., and that Black's status as K.P.'s live-in boyfriend did not invest Black with legal responsibility for Z.B.'s welfare.  The parties further agree that the State was therefore required to prove that Black was "employed by" K.P. to care for Z.B.  *See id.*

---

[3] The State's response brief describes the elements of child neglect as they are set forth in WIS JI—CRIMINAL 2150 (July 2019).  That instruction was approved by the Criminal Jury Instructions Committee in December 2018, to reflect amendments to WIS. STAT. § 948.21 that took effect on April 18, 2018.  *See* WIS JI—CRIMINAL 2150 cmt (July 2019).  Neither the amended statute nor the 2019 jury instruction was in effect in 2017 when Black was charged with and tried for child neglect.

¶14     The purpose of WIS. STAT. § 948.01(3) is to "combat[] the evils of child abuse." *See State v. Sostre*, 198 Wis. 2d 409, 415, 542 N.W.2d 774 (1996). In *Sostre*, our supreme court determined that it must liberally construe the statutory phrase "employed by" to effect the legislature's implicit intent "to 'broadly define the category of persons responsible for a child's welfare.'" *Id.* (citation omitted). The *Sostre* court therefore held that a "live-in boyfriend, who is a volunteer caretaker of a child, is a 'person responsible for the welfare of a child' ... if he was used by the legal guardian of the child as a caretaker for the child." *Id.* at 411 (brackets and ellipsis omitted).

¶15     In this case, the State largely relied on Black's custodial statements to prove that Black was "employed by" K.P. as a caretaker for Z.B. In those statements, Black admitted that he felt responsible for Z.B., and Black repeatedly described Z.B. as a member of Black's family. Black further admitted that he helped K.P. to care for Z.B. He said that on June 10, 2017, he told K.P. that he was going to give Z.B. a bath to cool him down after K.P. said that she was "going to sleep [and was] not trying to hear this crying."

¶16     Black argues that his admissions are insufficient to demonstrate his responsibility for Z.B.'s welfare because K.P. was in the home at the time that Black carried out caretaking activities. According to Black, if K.P. had been absent from the home at that time, then "Black's statements to police about his relationship with Z.B. combined with the fact that [Black] was caring for Z.B. exclusively would likely have been sufficient circumstantial evidence to prove that [] Black was a person employed by K.P. to exercise temporary care or control of Z.B." We do not agree that K.P.'s presence or absence is determinative, or even particularly significant.

7

¶17   In *Sostre*, the defendant lived with his girlfriend and her young son. *Id.* at 412. The child's mother—his legal guardian—"left [the child] in the defendant's exclusive care" for several hours. *See id.* Our supreme court concluded that "[u]nder these facts, it seems clear that the mother made use of the services of the defendant ... in order to take care of her child when it was necessary for her to be away." *Id.* at 415. Thus, *Sostre* describes the circumstances under which the legal guardian in that case employed a live-in boyfriend to provide child care. Those circumstances included the legal guardian's absence from the home. Nothing in *Sostre*, however, limits its applicability to circumstances where the legal guardian is absent. Rather, *Sostre* applies if a live-in boyfriend was a volunteer caretaker who "was used by the legal guardian of the child as a caretaker for the child." *See id.* at 411.

¶18   Here, Black admitted to police that he helped K.P. to care for Z.B. and felt responsible for doing so. He also admitted telling K.P. that he was going to give Z.B. a bath to cool him down after K.P. said that she was going to sleep. The jury could reasonably infer from Black's admissions that Black was a volunteer caretaker that K.P. used to fulfill her caretaker duties. The evidence was therefore sufficient to prove that Black was responsible for Z.B.'s welfare within the meaning of WIS. STAT. § 948.21(1)(b) (2015-16). We reject Black's contrary contentions.

¶19   We turn to the claim that a new factor warrants modification of Black's sentences. A new factor for purposes of sentence modification is "a fact or set of facts highly relevant to the imposition of sentence, but not known to the trial judge at the time of original sentencing, either because it was not then in existence or because ... it was unknowingly overlooked by all of the parties." *See State v. Harbor*, 2011 WI 28, ¶40, 333 Wis. 2d 53, 797 N.W.2d 828 (citation

8

omitted). A circuit court has inherent authority to modify a defendant's sentence upon a showing of a new factor. *See id.*, ¶35. To prevail, the defendant must satisfy a two-prong test. *See id.*, ¶36. First, the defendant must demonstrate by clear and convincing evidence that a new factor exists. *See id.* This presents a question of law for our *de novo* review. *See id.*, ¶¶33, 36. Second, the defendant must demonstrate that the new factor justifies sentence modification. *See id.*, ¶37. This determination rests in the circuit court's discretion. *See id.* If a defendant fails to satisfy one prong of the test, a court need not address the other. *See id.*, ¶38.

¶20 Black asserts that a report from a psychologist, Dr. Nancy Elliott, is a new factor here. The report summarizes current psychological research, which shows that adverse childhood experiences are linked to adverse physical and mental health outcomes and increase the rate of criminal justice involvement. Black contends that the report is highly relevant because he had a traumatic childhood that included parental abuse and neglect. Further, he says, the "research suggests that 'consideration of the developmental context of those involved in the criminal justice system is necessary before evaluating culpability.'" In his view, the sentencing court overlooked this information and wrongly discounted the impact of his childhood experiences when fashioning his sentences.

¶21 The circuit court correctly concluded that Black did not present a new factor. As the circuit court explained, the psychologist's report "offers a general link between childhood trauma and adult criminality. [Dr. Elliott] does not render an opinion that the defendant's childhood experiences precipitated the crimes for which he was sentenced in this case." Black therefore did not show that the report was "highly relevant" to the sentencing decision; to the contrary, he failed to show that the information in the report necessarily applied to him.

9

Moreover, the report offers only an opinion regarding the possible significance of Black's childhood trauma and hardships, which were discussed at sentencing. An expert's opinion based on previously known or knowable facts is not a new factor because such an opinion is not itself a "fact or set of facts" that the sentencing court overlooked. *See **State v. Sobonya***, 2015 WI App 86, ¶7, 365 Wis. 2d 559, 872 N.W.2d 134; *see also **State v. Longmire***, 2004 WI App 90, ¶46, 272 Wis. 2d 759, 681 N.W.2d 534 (concluding that an opinion about correctional policy is not a fact or set of facts relevant to sentencing).

¶22 Moreover, assuming for the sake of argument that Dr. Elliott's report was a "new factor," the circuit court properly exercised its discretion in concluding that the report did not warrant a sentence modification. The sentencing court was fully aware that Black had survived a miserable childhood but found that the horrific crimes he committed against an eight-week-old infant "outweighed everything else" and required the eight-and-one-half years of initial confinement and six years of extended supervision imposed. In the postconviction proceedings, the circuit court similarly rejected the suggestion that Black's background counterbalanced the gravity of his criminal conduct. Moreover, the circuit court concluded that Dr. Elliott's report spotlighted the ongoing risk that Black poses and further demonstrated the need for a sentence that would "protect the community and break the cycle of abuse." Therefore, the circuit court reasonably concluded that "modifying [Black's] sentence[s] ... would unduly depreciate the seriousness of the offenses and undermine the sentencing goals of punishment, deterrence and community protection."

¶23 The postconviction order reflects a proper exercise of discretion. The circuit court assessed Black's claim for sentence modification in light of proper factors and made no errors of law. *See **Harbor***, 333 Wis. 2d 53, ¶63.

Accordingly, we reject Black's challenge to the decision denying sentence modification based on an alleged new factor. For all the foregoing reasons, we affirm.

*By the Court.*—Judgment and order affirmed.

This opinion will not be published. *See* WIS. STAT RULE 809.23(1)(b)5.