McMANUS, Guardian *ad litem,* and others, Plaintiffs and Respondents, v. HINNEY and others, Defendants: IOWA NATIONAL MUTUAL INSURANCE COMPANY, Defendant and Appellant.

*May 11—June 7, 1966.*

334

For the appellant there was a brief by *Robert G. Hartman* of Juneau, attorney, and *W. Scott Van Alstyne, Jr.,* of Madison of counsel, and oral argument by *Mr. Van Alstyne.*

For the respondents there was a brief by *Jack McManus,* and oral argument by *David J. Meier,* both of Madison.

GORDON, J. Two problems are presented by this appeal. First, we must determine whether the former parental-immunity rule (now abolished) applied not only to natural parents but also to persons standing *in loco parentis* to minor children. Secondly, we must decide whether the record in the present case adequately establishes that the driver, Joseph LaCaria, was *in loco parentis* with reference to the minor plaintiffs.

### Application of Immunity Rule to Persons In Loco Parentis.

The parental-immunity rule was abolished prospectively in Wisconsin by *Goller v. White* (1963), 20 Wis. (2d) 402, 414, 122 N. W. (2d) 193. The protection afforded by parental immunity would not apply to causes of action which arose after June 28, 1963. The cause of action in the instant case arose from an accident occurring on January 20, 1963, at a time when the parental-immunity rule was still operative.

Since Joseph LaCaria was not a natural parent of the injured children, we are asked to decide whether the former immunity rule protected one who was *in loco parentis*. *Goller v. White, supra,* not only ended parental immunity but also was determinative of this question.

In *Goller* a child sued his foster parent, a person who was treated by the court as one *in loco parentis*. A reading of the *Goller* decision makes it clear that this court deemed that under prior law a foster parent was entitled to the immunity. Indeed, this court, at page 408, quoted with approval from the opinion of the trial judge, wherein it was stated that a foster parent stood *in loco parentis* and that "it is not necessary that one be a blood relative in order to be a member of a family." Thus, the *Goller* decision clearly recognized that the former parental-immunity rule did apply to one who stood *in loco parentis*.

The foregoing conclusion is further buttressed by the fact that in a concurring opinion in *Goller* Mr. Chief Justice BROWN opposed the application of immunity with regard to persons who were not natural parents. He stated:

". . . I do not believe that the circumstances of Goller's residence in White's household have created parental relationship. I would not extend to White the immunities possessed by a true parent."

However, no other member of the court joined in that concurrence, and the distinction thereby made serves to clarify the question now before the court.

We believe it is clear that the parental-immunity rule (prior to its abrogation) did in fact apply to a person who stood *in loco parentis* to an unemancipated minor.

*Is Joseph LaCaria In Loco Parentis?*

On this appeal we do not have a transcript of the testimony. In lieu thereof, there has been submitted a state-

ment of facts which was settled by the trial court. Notice of the proposed settlement of the facts was given to the appellant, who apparently made no objection. In view of the foregoing, we deem the trial judge's "settled" statement of facts to be accurate. This statement of facts asserts that Charlotte and Joseph LaCaria, together with the children who are the plaintiffs in this action, "lived together as a family unit." It further states that such children were not emancipated.

The only disagreement with the statement of facts is to be found in Mrs. LaCaria's affidavit, which states that she never considered Joseph LaCaria to be *in loco parentis* to her two children. The affidavit also asserts that the two children were always represented as children of her prior marriage and that they used the surname of her previous husband.

A person stands *in loco parentis* to a minor child if he has assumed the status and obligation of a parent without a formal adoption. Whether or not this relationship exists is a matter of intent to be deduced from the facts of a particular case. In determining whether a person stands *in loco parentis,* factual considerations may include the children's ages, their dependence upon the person claimed to be *in loco parentis,* and whether such person in fact supports the children and exercises the duties and obligations of a natural parent.

The declaration that Joseph LaCaria, his wife, and the two minor children "lived together as a family unit" might well raise an inference that Joseph LaCaria stood *in loco parentis* to the two Ponce children. However, the affidavit of Mrs. LaCaria challenging such inference was filed subsequent to the trial court's settlement of the facts, and therefore we deem it best to return this case to the trial court for a factual resolution of the *in loco parentis* issue.

The determination of the *in loco parentis* question involves matters of fact and intention which the trial

court in its discretion should resolve after affording the parties an opportunity to offer additional evidence.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings consistent with this opinion.