Thomas GRITZNER and Sandra Gritzner, parents and guardians of Tara G., a minor, Plaintiffs-Appellants-Petitioners,

v.

MICHAEL R., a minor, and Karen Rosetti, as parent of Michael R., Defendants,

Roger BUBNER, as custodian of Michael R., and American Family Mutual Insurance Company, Defendants-Respondents-Petitioners.

Supreme Court

*No. 98–0325. Oral argument February 9, 2000.—Decided June 23, 2000.*

2000 WI 68

(Also reported in 611 N.W.2d 906.)

For the plaintiffs-appellants-petitioners there were briefs by *Steven J. Watson* and *Steven J. Watson Law Office*, Elkhorn, and oral argument by *Steven J. Watson*.

For the defendants-respondents-petitioners there were briefs by *Thomas M. Devine, JoAnne M. Breese-Jaeck*, and *Hostak, Henzl & Bichler, S.C.*, Racine, and *Phillip C. Theesfeld* and *Baxter, O'Meara & Samuelson*, Milwaukee, and oral argument by *Thomas M. Devine*.

¶ 1. JON P. WILCOX, J. The plaintiffs in this case are the parents of a four-year-old girl, Tara, who was sexually abused by her ten-year-old neighbor, Michael. The abuse allegedly took place while Tara was visiting Michael's home, where Michael lived with his mother and his mother's boyfriend Roger Bubner. After learning about this incident, Tara's parents filed civil suits against various parties, including Bubner.

¶ 2. The case at hand involves the plaintiffs' suit against Roger Bubner. The plaintiffs allege that

785

Bubner was entrusted with the care of Tara while she was in his home, that Bubner had custody and control of Michael, and that Bubner knew or should have known that Michael might engage in inappropriate sexual acts if left alone with Tara. On the basis of these allegations, the plaintiffs brought claims against Bubner for (1) negligent failure to warn them of Michael's propensity to engage in inappropriate sexual acts, and (2) negligent failure to control Michael's conduct.

¶ 3. The circuit court granted Bubner's motion to dismiss these claims. In reaching its decision, the circuit court relied on *Kelli T-G. v. Charland*, 198 Wis. 2d 123, 542 N.W.2d 175 (Ct. App. 1995), which held that public policy considerations barred a claim for negligent failure to warn in a case involving an ex-wife who did not warn another child's mother about her ex-husband's pedophilic propensities.

¶ 4. The plaintiffs appealed. In a published opinion, the court of appeals affirmed in part and reversed in part. *Gritzner v. Michael R.*, 228 Wis. 2d 541, 598 N.W.2d 282 (Ct. App. 1999). With some reluctance, the court of appeals affirmed the circuit court's decision that the claim for negligent failure to warn was barred by the reasoning of *Kelli T-G.. Id.* at 549–551. However, the court of appeals reinstated the claim for negligent failure to control. *Id.* at 555–57. Both parties petitioned this court for review.

¶ 5. Upon review, all members of the court agree that the case should be remanded to the circuit court. Those justices who join the lead opinion would affirm the court of appeals on both counts. We would hold that public policy considerations preclude the plaintiffs' claim for negligent failure to warn. We would recognize the Gritzners' claim for negligent failure to control only

because liability for failure to control can be imposed on distinct, narrow grounds that do not raise the same public policy considerations that preclude liability for failure to warn.

## I. FACTS

¶ 6. Because this case arises on a motion to dismiss for failure to state a claim, we must accept as true all facts alleged in the complaint and all reasonable inferences from those facts. *Doe v. Archdiocese of Milwaukee*, 211 Wis. 2d 312, 320, 565 N.W.2d 94 (1997). The material facts alleged are as follows.

¶ 7. In 1996 the defendant Roger Bubner was living in Lake Geneva with his girlfriend Karen R. and her ten-year-old son Michael. Some time before May 1, 1996, Michael engaged in inappropriate sexual acts with another child or children, including his half-sister. Bubner knew that this had occurred.

¶ 8. Thomas and Sandra Gritzner and their four-year-old daughter Tara lived on the same street as Bubner. Bubner knew that Thomas, Sandra, and Tara were his neighbors and that Thomas and Sandra were Tara's parents.

¶ 9. At relevant times between approximately May 1, 1996 and July 7, 1996, Tara visited Bubner's home to play with Michael and other children. Bubner consented to Tara's presence in his home, and the Gritzners entrusted Tara to Bubner's care during these visits. Bubner also assumed custody and control over Michael at these times. Bubner knew or should have known that there was a danger Michael would engage in inappropriate sexual acts if left unsupervised with Tara.

¶ 10. On July 7, 1996, Bubner and Karen R. informed Thomas and Sandra Gritzner that Michael had sexually abused Tara while the children were unsupervised at Bubner's home. On August 21, 1996, a child abuse investigator from the local Department of Human Services confirmed Michael's alleged sexual abuse of Tara.

## II. PROCEDURAL HISTORY

¶ 11. In June 1997 the Gritzners filed a complaint against Bubner[1] claiming (1) negligent failure to warn them of Michael's propensity to sexually abuse Tara, and (2) negligent failure to control Michael.[2] In his answer to the complaint, Bubner denied the allegations and argued that in any case the complaint failed to state a claim for which relief could be granted.

¶ 12. Bubner subsequently filed a motion to dismiss the Gritzners' claims, arguing that (1) *Kelli T-G.* barred the failure to warn claim, and (2) the romantic relationship between Bubner and Karen R. did not impose on Bubner a duty to supervise or control Michael's conduct. In response, the Gritzners argued that for purposes of the motion to dismiss, it must be assumed that Bubner had custody and control over Michael as alleged in the complaint. The Gritzners further argued that under *Shannon v. Shannon,* 150 Wis. 2d 434, 442 N.W.2d 25 (1989), their claims were viable

---

[1] The Gritzners also sued Michael's mother, Karen R., and Bubner's mother, Georgia, who owned the home in which Bubner, Karen R., and Michael lived. The claim against Georgia has been dismissed. Only the suit against Bubner is at issue in this appeal.

[2] The Gritzners also brought a claim against Bubner for negligent infliction of emotional distress. The Gritzners did not appeal the dismissal of that claim.

based on Bubner's duty to exercise ordinary care toward all persons who came upon his property with consent. Finally, the Gritzners argued that *Kelli T-G.* was not dispositive because it was factually distinguishable.

¶ 13. The Circuit Court for Walworth County, James L. Carlson, Judge, granted Bubner's motion to dismiss. Judge Carlson determined that Bubner had no legal duty to warn the Gritzners about Michael's alleged propensities or to control Michael's conduct. The judge further concluded that *Shannon* did not apply and that *Kelli T-G.* was dispositive.

¶ 14. The Gritzners appealed. The court of appeals first noted that under *Shannon* an occupier of premises generally owes a duty of ordinary care towards all persons who come onto the premises with consent. *Gritzner*, 228 Wis. 2d at 548 (quoting *Shannon*, 150 Wis. 2d at 443–44). With regard to the claim for negligent failure to warn, the court indicated that although it was "not enthusiastic about the holding in *Kelli T-G.*," it was nonetheless bound to follow existing precedent, and affirmed the circuit court's decision to dismiss the claim. *Gritzner*, 228 Wis. 2d at 551.

¶ 15. Turning to the claim for negligent failure to control, the court concluded that *Kelli T-G.* was distinguishable. The court determined that under the Restatement (Second) of Torts and Wisconsin law, Bubner had a special relationship with both Michael and Tara and that because of these special relationships Bubner had a duty to control Michael's conduct for the purpose of protecting Tara. *Id.* at 554–56. The court further noted that the duty imposed under a failure to warn claim is "manifestly different" from the duty imposed under a failure to control claim. *Id.* at 558. Because no public policy considerations precluded

789

liability, the court reversed the circuit court's decision to dismiss the claim for negligent failure to control. *Id.* at 559–60.

¶ 16. Both parties petitioned this court for review.

### III. STANDARD OF REVIEW

¶ 17. A motion to dismiss for failure to state a claim tests whether the complaint is legally sufficient to state a cause of action for which relief may be granted. *Doe,* 211 Wis. 2d at 331. The legal sufficiency of the complaint is a question of law that this court reviews *de novo. Wausau Tile, Inc. v. County Concrete Corp.,* 226 Wis. 2d 235, 245, 593 N.W.2d 445 (1999). In examining the legal sufficiency of the complaint, the court assumes that the facts alleged in the complaint are true. *Id.; Doe,* 211 Wis. 2d at 331. However, the court does not assume that the legal conclusions pleaded in the complaint are true. *Doe,* 211 Wis. 2d at 331.

¶ 18. A court may not grant a motion to dismiss for failure to state a claim unless there are no conditions under which relief could be granted. *Id.; Wausau Tile,* 226 Wis. 2d at 245.

### IV. GENERAL PRINCIPLES OF NEGLIGENCE LAW IN WISCONSIN

¶ 19. The Gritzners' claims invoke principles of common law negligence. To establish a negligence claim, a plaintiff must prove: (1) the existence of a duty of care on the part of the defendant, (2) a breach of that duty of care, (3) a causal connection between the defendant's breach of the duty of care and the plaintiff's

injury, and (4) actual loss or damage resulting from the injury. *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 260, 580 N.W.2d 233 (1998) (quoting *Rockweit v. Senecal*, 197 Wis. 2d 409, 418, 541 N.W.2d 742 (1995)).

¶ 20. The first element, a duty of care, is established under Wisconsin law whenever it was foreseeable to the defendant that his or her act or omission to act might cause harm to some other person. *Rockweit*, 197 Wis. 2d at 420 (quoting *Rolph v. EBI Cos.*, 159 Wis. 2d 518, 532, 464 N.W.2d 667 (1991)).[3] At the very least, every person is subject to a duty to exercise ordinary care in all of his or her activities. *Rockweit*, 197 Wis. 2d at 419.

¶ 21. The Gritzners' claims against Bubner are based on Bubner's duty to take certain affirmative actions—to warn Tara's parents about Michael and to control Michael's behavior. Bubner frames his response to the Gritzners' claims under the rules governing affirmative duties to act in the Restatement (Second) of Torts, which provide that in the absence of a special relationship, a person does not have a duty to take affirmative action to help or protect another person. Restatement (Second) of Torts §§ 314–324 (1965).

¶ 22. This court has considered and relied on some of these Restatement provisions in evaluating negligence claims. However, this court has not expressly adopted this framework. *See Schuster v.*

---

[3] Thus, Wisconsin does not follow the majority view in *Palsgraf v. Long Island Railroad Co.*, 162 N.E. 99, 99–101 (N.Y. 1928), under which the existence of a duty of care depends upon whether injury to the particular victim was foreseeable. *See Schilling v. Stockel*, 26 Wis. 2d 525, 531, 133 N.W.2d 335 (1965) (discussing this court's adoption and subsequent rejection of the majority "no-duty" formula in *Palsgraf*).

*Altenberg*, 144 Wis. 2d 223, 238 and n.3, 424 N.W.2d 159 (1988). Instead, the general framework governing the duty of care in Wisconsin negligence actions is that:

> A person is negligent when [he or she] fails to exercise ordinary care. Ordinary care is the care which a reasonable person would use in similar circumstances. A person is not using ordinary care and is negligent, if the person, without intending to do harm, does something (or fails to do something) that a reasonable person would recognize as creating an unreasonable risk of injury or damage to a person or property.

Wis JI—Civil 1005. *See also Rockweit*, 197 Wis. 2d at 419 (" 'Each individual is held, at the very least, to a standard of ordinary care in all activities.' ") (citing *Coffey v. Milwaukee*, 74 Wis. 2d 526, 537, 247 N.W.2d 132 (1976)).

¶ 23. In Wisconsin, although a person does not commit negligence simply by being present at the scene of an accident, *McNeese v. Pier*, 174 Wis. 2d 624, 632, 497 N.W.2d 124 (1993), failure to take an affirmative action may constitute negligence when it is inconsistent with the duty to exercise ordinary care. *See Rockweit*, 197 Wis. 2d at 423 (suggesting that during the time that a social guest was sitting at a campfire, her duty of ordinary care might include an affirmative duty to protect the child from the fire).

¶ 24. Of course, even when a duty of care exists and the other elements of negligence have been established, public policy considerations may preclude liability. However, Wisconsin courts address public policy concerns directly, rather than asking whether

the defendant owed a "duty" to the particular victim.[4] Thus, this court has observed:

> [W]ithin the framework of a negligence case the particular conduct of a defendant is not examined in terms of whether or not there is a duty to do a specific act, but rather whether the conduct satis- · fied the duty placed upon individuals to exercise

[4] As the defendant notes, some Wisconsin cases have examined liability limitations in terms of duty. *See Estate of Becker v. Olson*, 218 Wis. 2d 12, 579 N.W.2d 810 (Ct. App. 1998); *Zelco v. Integrity Mut. Ins. Co.*, 190 Wis. 2d 74, 527 N.W.2d 357 (Ct. App. 1994); *Erickson v. Prudential Property and Cas. Ins. Co.*, 166 Wis. 2d 82, 479 N.W.2d 552 (Ct. App. 1991). This formulation of the analysis is incorrect under Wisconsin law. In Wisconsin, everyone has a duty to act with reasonable care. Liability for breach of that duty is limited on public policy grounds. *See Rockweit v. Senecal*, 197 Wis. 2d 409, 425, 541 N.W.2d 742 (1995) (explaining that although some cases have denied liability on the basis that an actor had no "duty" to the injured party, the decision to deny liability is essentially one of public policy and not duty or causation). *See also Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d 627, 644–45, 517 N.W.2d 432 (1994)(explaining that in deciding whether to impose liability for negligence, Wisconsin courts use a public policy formulation rather than a foreseeability or duty formula-tion)(citing *Klassa v. Milwaukee Gas Light Co.*, 273 Wis. 176, 183, 77 N.W.2d 397 (1956)); *Schuster v. Altenberg*, 144 Wis. 2d 223, 266, 424 N.W.2d 159 (1988) (Steinmetz, J., concurring) (noting that Wisconsin has a distinct approach to negligence under which liability is limited through policy considerations after the elements of duty and causation have been established); *Klassa*, 273 Wis. 2d at 183 ("Whenever a court holds that a certain act does not constitute negligence because there was *no duty* owed by the actor to the injured party, although the act complained of caused the injury, such court is making a policy determination.").

that degree of care as would be exercised by a reasonable person under the circumstances.

*Walker v. Bignell*, 100 Wis. 2d 256, 264, 301 N.W.2d 447 (1981).

¶ 25. In sum, the crucial question in evaluating the Gritzners' claims is not whether Bubner had any "duty" to take affirmative actions but whether Bubner's alleged failure to take certain actions was consistent with his duty to exercise a reasonable degree of care.

¶ 26. Moreover, even if the plaintiff is able to establish a duty of care and the other elements of a negligence claim, the court may nonetheless determine that public policy considerations preclude liability. *Sawyer v. Midelfort*, 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999); *Miller*, 219 Wis. 2d at 264–265; *Rockweit*, 197 Wis. 2d at 425–26; *Schuster*, 144 Wis. 2d at 240. Before determining whether public policy considerations preclude liability, it is usually a better practice to submit the case to the jury. *Sawyer*, 227 Wis. 2d at 141; *Miller*, 219 Wis. 2d at 265; *Schuster*, 144 Wis. 2d at 241. However, when the facts are not complex and the relevant public policy questions have been fully presented, this court may determine whether public policy precludes liability before trial. *Sawyer*, 227 Wis. 2d at 141; *Miller*, 219 Wis. 2d at 265; *Schuster*, 144 Wis. 2d at 241.

¶ 27. The question of whether public policy considerations preclude liability is a question of law that this court determines without deference to any other court. *Rockweit*, 197 Wis. 2d at 425. The public policy reasons that may preclude liability include: (1) the injury is too remote from the negligence, (2) the injury is too wholly out of proportion to the tortfeasor's culpa-

bility, (3) in retrospect it appears too highly extraordinary that the negligence should have resulted in the harm, (4) allowing recovery would place too unreasonable a burden on the tortfeasor, (5) allowing recovery would be too likely to open the way for fraudulent claims, and (6) allowing recovery would enter a field that has no sensible or just stopping point. *Id.* at 426.

## V. PUBLIC POLICY PRECLUDES THE GRITZNERS' CLAIM FOR NEGLIGENT FAILURE TO WARN

¶ 28. We first consider the Gritzners' claim that Bubner negligently failed to warn them of Michael's propensity to abuse Tara. In *Kelli T-G.*, the court of appeals determined that public policy considerations barred a somewhat similar claim. *Kelli T-G.*, 198 Wis. 2d at 130–31. A closer look at *Kelli T-G.* is helpful to understanding our determination that public policy concerns should bar the Gritzners' claim.

¶ 29. After Kelli T-G. was sexually abused by Gerald Charland, Kelli's mother and guardian ad litem filed suit against Charland's ex-wife, Patricia Neubauer, on the basis that Neubauer breached her duty to warn Kelli's mother about Charland's pedophilia. *Id.* at 125–26.

¶ 30. Neubauer and Charland were married in 1985 and had a daughter, Geri. *Id.* at 126. The couple separated approximately eight months after their marriage, and Neubauer filed for divorce a few months later. *Id.* Neubauer did not learn about Charland's convictions for sexually assaulting children until after the couple separated. *Id.*

¶ 31. Immediately following the couple's divorce, Charland was not allowed to have unsupervised visita-

tion with Geri. *Id.* By approximately January 1991, Charland had completed counseling and probation for his prior convictions and was allowed unsupervised visitation. *Id.*

¶ 32. In April or May 1991 Neubauer became aware that Geri's friend Kelli sometimes played with Geri at Charland's home. *Id.* Neubauer was concerned about the risk that Charland might sexually abuse Kelli and intended to say something about it to Kelli's mother. *Id.* at 127–28. Neubauer testified that she asked Kelli's mother to call her at home, but that she did not take the affirmative step of telling Kelli's mother about Charland's convictions. *Id.* On July 15, 1991, Charland sexually abused Kelli. *Id.* at 125.

¶ 33. Neubauer moved for summary judgment against Kelli's claim, arguing that Wisconsin law imposes no duty to warn a third party about another person's dangerous propensities in the absence of a special relationship, and that no such special relationship had been established. *Id.* at 128. The trial court agreed. *Id.*

¶ 34. In its review, the court of appeals first noted that Wisconsin law is in conflict regarding what kind of relationship is necessary to establish a duty to warn about the dangerous propensities of third parties. *Id.* at 129. However, in a unanimous opinion, the court determined that it did not need to resolve that issue "because the issue in this case is clearly resolved on public policy grounds." *Id.* We quote the court's discussion of the relevant public policy considerations in full:

> [R]ecovery [against Neubauer] would enter a field not only with no definable, sensible stopping point, but no sensible starting point as well.

796

Slight variations on the facts of this case illustrate the virtual impossibility of defining a sensible starting or stopping point. Would Neubauer's duty to warn depend on whether she knew of Charland's progress in counseling or compliance with probation? Would her duty depend on her assessment of whether the criminal justice system had adequately addressed the dangers Charland posed? Would Neubauer's duty have varied if she had been a mental health or criminal justice professional? If so, would her duty have further varied according to her opinion about the appropriateness and adequacy of the probation and conditions ordered by the criminal court? If Charland had been charged but never convicted of child sexual abuse, and if Neubauer believed, nonetheless, that Charland was a pedophile, would she still have had a duty to warn? And if Neubauer had been wrong in her forecast of Charland's potential danger, would she have been liable to Charland for warning Carolyn T.?

Moreover, who would Neubauer have a duty to warn? Neubauer answers that she would have a duty to warn only those "where foreseeability of harm is clear. . .and where the foreseeable victim is known." Would that extend to the next door neighbor? Would that include every one of Kelli's close friends or classmates? To protect herself from potential liability, would Neubauer need to remain as ignorant as possible of Charland's activities and associations so that she would not come to know of his "foreseeable victims?" If so, ironically, any *moral* duty to warn that Neubauer otherwise might have felt would be undermined by potential liability for the *legal* duty she no longer could avoid.

Tragically, sexual abuse has brought devastating consequences to countless children and their families. Sadly, our society has discovered that many pedophiles elude the control of the criminal

justice system. Many seem unchanged despite psychotherapeutic intervention and the rehabilitation efforts of corrections, probation, and parole. As pedophiles sexually abuse children again and again, some state legislatures, in a desperate effort to locate new methods to stop the assaults, debate whether to enact "neighborhood notification" laws to warn citizens of paroled child molesters living in their communities. Thus, legislatures debate the appropriate scope of *government's* duty to warn and they struggle to define sensible starting and stopping points. For government, the struggle is extremely difficult as a matter of public policy. For an individual citizen, the struggle is extremely difficult as a matter of morality, and virtually impossible as a matter of law.

*Id.* at 130–132.

¶ 35. In essence, the court of appeals determined that allowing recovery would impose liability for failure to warn in situations in which the decision whether to warn is fraught with difficulty and in which no just and sensible legal guidelines are available to limit liability.

¶ 36. For similar reasons, we conclude that in this case there are no just and sensible guidelines for defining liability for negligent failure to warn. Indeed, allowing recovery for failure to warn in this case would create liability with far fewer limiting guidelines than were available in *Kelli T-G.*.

¶ 37. To begin with, Charland was an adult who had been convicted of three offenses of sexually assaulting children and was known to possess child pornography. Michael, on the other hand, is a ten-year-old child who had previously engaged in unspecified "inappropriate sexual acts" with one or more children including his half-sister. It is not alleged that Michael

was adjudicated delinquent based on his previous conduct.[5] If Bubner's knowledge that Michael had previously engaged in an unadjudicated, inappropriate sexual act with another child is sufficient to support a claim for failure to warn, it is difficult to imagine what level of knowledge would be insufficient to support liability.

¶ 38. Worse yet, allowing recovery in this case would extend a duty to warn to a much larger group of people than in *Kelli T-G.*. Unlike Charland, Michael is a child himself and is therefore in near-constant contact with other children. If liability for failure to warn is recognized under the facts alleged by the Gritzners, the same liability would extend to any child with whom Michael might play unsupervised—his classmates at school, children at a birthday party, children at family gatherings, or children on a playground. There is no just or sensible reason to allow Tara to recover but to limit liability for these other children.[6] The practical

[5] The Gritzners do not allege that Michael's previous inappropriate sexual act or acts were the subject of any juvenile court proceedings. In her answer to the Gritzners' complaint, Michael's mother admits that Michael had previously engaged in inappropriate sexual acts but states that an employee of the local Department of Human Services dismissed Michael's behavior as normal and recommended that no action be taken.

[6] For this reason we reject the Gritzners' argument that they may recover for negligent failure to warn under the rationale that a land possessor owes a duty of ordinary care toward guests. *See Shannon v. Shannon*, 150 Wis. 2d 434, 443–44, 442 N.W.2d 25 (1989). Although this rationale offers some limits on liability, those limits are not just or sensible in the context of the Gritzners' claim. If Bubner's failure to warn Tara's parents about Michael constitutes negligence, it is not just or sensible to disallow recovery simply because the abuse took place at Tara's home rather than Michael's.

effect would be to require any adult who cared for a child who had previously engaged in any conduct that could be characterized as an "inappropriate sexual act" to stigmatize this child in all of his or her relations with other children. We are greatly hesitant to impose such a limitless duty to warn.

¶ 39. The Gritzners urge that there are just and sensible stopping points for liability in this case because (1) Wis. Stat. § 48.01 (1997–98)[7] establishes an overriding public policy in favor of protecting a child from sexual abuse over protecting an adult from liability, and (2) Wis. Stat. § 48.981 authorized Bubner to report to the local Department of Human Services that Tara was at risk of being abused. According to the Gritzners, a common law cause of action for negligent failure to warn would further the public policies embodied by these statutes.

¶ 40. Although Wis. Stat. § 48.01 codifies a general public policy in favor of protecting children from all forms of abuse, it does not provide the just and sensible stopping points that are necessary before a civil cause of action in negligence may be recognized in

---

Furthermore, *Shannon* did not involve the issue of failure to warn about a third party's alleged propensities, and the limits provided by *Shannon* are not sufficient to resolve the public policy considerations in this case. Under *Shannon*, liability would extend to the parents of all children who came onto Bubner's property. The practical effect would still be to require Bubner issue broad warnings about Michael. We conclude that the Gritzners cannot recover for negligent failure to warn under the rationale of *Shannon*.

[7] Subsequent references to the Wisconsin Statutes are to the 1997–98 volumes unless otherwise indicated.

Wisconsin. Similarly, although Wis. Stat. § 48.981[8] authorizes private parties to report about abuse and the risk of abuse, it provides no basis for civil liability in this case. Section 48.981(2) requires that certain professionals in positions of authority, such as health professionals, teachers, childcare workers, and law enforcement personnel, report suspected abuse of a child. Persons who are subject to this mandatory reporting requirement may be fined and imprisoned for failure to report. Wis. Stat. § 48.981(6). All other persons "may" report abuse, but are not required to do so, and are not subject to any penalties for failure to report. §§ 48.981(2) and (6). Thus, § 48.981 does not provide a basis for a civil cause of action for negligent failure to warn.

¶ 41. Furthermore, requiring that adults give such broad warnings about a child seems contrary to the policy established in Children's Code provisions, which provide that juvenile law enforcement and court records are held confidential and may only be released by court order. *See* Wis. Stats. §§ 48.396,[9] 48.78; *State ex rel. Herget v. Waukesha County Cir. Ct.*, 84 Wis. 2d 435, 450–52, 267 N.W.2d 309 (1978). Confidentiality of juvenile records is considered to be "essential to the goal of rehabilitation." *Id.* at 451. These confidentiality concerns weigh against the Gritzners' claim.

¶ 42. We also note that the Wisconsin Legislature has confronted the issue of the need to warn the

[8] Wisconsin Stat. § 48.981 has been amended by the legislature since the publication of the 1997–98 volumes. *See* 1999 Wis. Acts 192, 149, 84, 56, and 32. In particular, see 1999 Wis. Act 149 and 1999 Wis. Act 56 (amending § 48.981(2)). These changes do not affect this analysis.

[9] Wisconsin Stat. § 48.396 has been amended. 1999 Wis. Acts 89 and 32. These amendments do not change this analysis.

public about sex offenders in the community and has specifically provided for circumstances under which public protection outweighs confidentiality concerns. The State of Wisconsin maintains a sex offender registry and provides notice and access to information about sex offenders as necessary for public protection. *See* 1993 Wis. Act 98 § 116; 1995 Wis. Act 440; Wis. Stats. §§ 301.45 and 301.46.[10] These provisions apply not only to adult sex offenders but also to juvenile offenders who have been adjudicated delinquent. *See* Wis. Stat. §§ 301.45(1g)(a)[11] and 301.46; *In the Interest of Jason J.C.*, 216 Wis. 2d 12, 18, 573 N.W.2d 564 (Ct. App. 1997)(rejecting a juvenile's argument that courts are empowered to expunge juvenile records because having to register as a sex offender under § 301.45 will have a stigmatizing effect). However, none of these provisions establishes a procedure under which the state issues warnings about a juvenile's unadjudicated acts of inappropriate sexual conduct, and none of these provisions imposes a duty to warn on private individuals. We would decline to impose such an obligation judicially.

¶ 43. Many courts have struggled with whether and under what conditions individuals may be held liable for failing to warn other individuals about the sexually abusive propensities of third parties.[12] We

---

[10] Wisconsin Stats. §§ 301.45 and 301.46 have been renumbered and substantially amended. *See* 1999 Wis. Acts 186, 156, 89, and 9, §§ 2714d–2717m. These amendments do not affect this analysis.

[11] Wisconsin Stat. § 301.45(1) (1997–98) has been renumbered (1g) and has been amended since publication of the 1997–98 volumes of the Wisconsin Statutes. 1999 Wis. Act 89.

[12] For cases allowing recovery, see, e.g., *Pamela L. v. Farmer*, 169 Cal. Rptr. 282 (Cal. Ct. App. 1980)(holding that a wife who invited and encouraged children to visit her premises

would not foreclose the possibility that under different circumstances a plaintiff could recover based on negligent failure to warn about a known risk of sexual abuse. We would merely hold that under the circumstances of this case, liability for failure to warn is barred by public policy.

¶ 44. In reaching this conclusion, we are very mindful of the permanent and devastating consequences of child sexual abuse. Nonetheless, we determine that a cause of action for negligent failure to

---

even though she knew that her husband had molested women and children in the past and might do so again could be held liable in negligence); *J.S. v. R.T.H.*, 714 A.2d 924 (N.J. 1998) (holding that a wife could be held liable for negligent failure to prevent or warn about her husband's sexual abuse when the wife had actual knowledge or special reason to know that the husband was likely to abuse a particular person or persons); *Doe v. Franklin*, 930 S.W.2d 921 (Tex. App. 1996)(holding that a grandmother could be held liable for failure to protect her granddaughter from a known risk of sexual abuse by the grandfather).

For cases not allowing recovery, see, e.g., *Eric J. v. Betty M.*, 90 Cal. Rptr. 2d 549 (Cal. Ct. App. 1999)(holding that family members of a parolee could not be held liable for failure to warn the parolee's girlfriend that he had been convicted of felony child molestation even though the girlfriend's son was allegedly abused on the family members' premises); *Doe v. Goff*, 716 N.E.2d 323 (Ill. App. Ct. 1999)(holding that the Boy Scouts of America could not be held liable for failure to prevent the sexual assault of a Boy Scout when the assault was not foreseeable); *H.B. v. Whittemore*, 552 N.W.2d 705 (Minn. 1996)(holding that a trailer park manager did not have a duty to warn or protect children whom she knew were being sexually abused by another resident of the trailer park); *T.A. v. Allen*, 669 A.2d 360 (Pa. Super. Ct. 1995)(holding that a stepmother did not have a duty to protect her husband's grandchildren from sexual abuse by the grandfather).

warn should not provide a remedy under the circumstances of this case. Because allowing recovery would enter a field in which there are no just and sensible stopping points for liability, we would hold that the Gritzners' claim for negligent failure to warn is barred as a matter of law.

## VI. PUBLIC POLICY DOES NOT BAR THE GRITZNERS' CLAIM FOR NEGLIGENT FAILURE TO CONTROL

¶ 45. Next, we are asked to decide whether the Gritzners' claim against Bubner for negligent failure to control Michael's conduct[13] is a claim for which relief may be granted. Bubner argues that the complaint is not sufficient to establish the first element, the existence of a duty on the part of Bubner to exercise ordinary care to control Michael's conduct. Bubner also contends that even if the complaint is legally sufficient

---

[13] This claim was entitled "negligent failure to control" in the Gritzners' initial complaint against Bubner. However, in their pleadings and at oral argument before this court, the parties have often referred to this claim as "negligent supervision." *See also Gritzner v. Michael R.*, 228 Wis. 2d 541, 551, 598 N.W.2d 282 (Ct. App. 1999)(labeling the claim "failure to supervise").

This court has recognized a tort of negligent supervision relating to an employer's "negligent supervision" of its employees. *See Doyle v. Engelke*, 219 Wis. 2d 277, 287, 580 N.W.2d 245 (1998) (citing *Miller v. Wal-Mart Stores, Inc.*, 219 Wis. 2d 250, 580 N.W.2d 233 (1998)). In order to avoid confusion, we believe that the Gritzners' claim is more appropriately labeled negligent "failure to control" a minor child. *See Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 477, 329 N.W.2d 150 (1983). Although we label the claim "negligent failure to control," the claim encompasses both failure to control and failure to supervise the conduct of a child.

804

to state a claim, public policy considerations preclude liability.

¶ 46. Because we conclude that public policy precludes the Gritzners' claim for failure to warn, we would not permit the failure to control claim to proceed unless there is some distinct, well-defined basis that will permit liability for failure to control but will not permit liability for failure to warn.

¶ 47. We conclude that there are two well-defined bases upon which Bubner might be held liable for failure to control Michael's conduct. Either of these legal theories is narrow enough to permit liability for failure to control without permitting liability for failure to warn. We also conclude that public policy considerations do not bar a narrowly defined claim for negligent failure to control under these theories.

A. A CLAIM FOR NEGLIGENT FAILURE TO CONTROL A MINOR CHILD MAY BE BASED ON THE DOCTRINE OF *IN LOCO PARENTIS*

¶ 48. In the Gritzners' complaint, the claim against Bubner for negligent failure to control Michael is based on Bubner's relationship with Michael. The complaint claims that as the boyfriend of Michael's mother, Bubner assumed custody and control over Michael and that he negligently failed to exercise his control over Michael for the protection of Tara.

¶ 49. This court has adopted the Restatement (Second) of Torts § 316, Duty of Parent to Control Conduct of Child, as an applicable standard of conduct in negligence actions. *See Nieuwendorp v. American Family Ins. Co.*, 191 Wis. 2d 462, 473, 529 N.W.2d 594 (1995); *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 477, 327 N.W.2d 150 (1983). Section 316 provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent
>> (a) knows or has reason to know that he has the ability to control his child, and
>> (b) knows or should know of the necessity and opportunity for exercising such control.

Restatement (Second) of Torts § 316. Wisconsin's civil jury instructions restate this standard of conduct as follows:

> A parent must use ordinary care to control his or her minor child so as to prevent the child from intentionally harming others or from conducting himself or herself so as to create an unreasonable risk [of] bodily harm to others, if the parent knows or should know:
>> (1) that [he or she] has the ability to control the child;
>> (2) that there is a necessity for exercising such control; and
>> (3) that there is an opportunity to do it.

Wis JI—Civil 1013.

¶ 50. If Bubner were Michael's legal parent, this standard of conduct would clearly apply to Bubner's failure to control Michael's conduct. *See Nieuwendorp*, 191 Wis. 2d at 473, (citing *Seibert v. Morris*, 252 Wis. 460, 463, 32 N.W.2d 239 (1948)); *Bankert*, 110 Wis. 2d at 477.

¶ 51. Although Bubner is not Michael's legal parent, the Gritzners' complaint alleges facts that imply that Bubner was in a parent-like relationship with Michael. The complaint alleges that Bubner and Michael's mother were in a romantic relationship and that Bubner, Michael, and Michael's mother lived

together in the same home. Furthermore, the complaint states that as a result of Bubner's relationship with Michael's mother, Bubner assumed custody and control over Michael. From these facts it seems reasonable to infer that although there was no formal legal relationship between Bubner and Michael, Bubner may have assumed parental responsibility and authority over Michael.

¶ 52. This court has recognized that an adult who is not a child's legal parent may sometimes stand in the position of a parent to that child. *See In re Custody of D.M.M.*, 137 Wis. 2d 375, 384–86, 404 N.W.2d 530 (1987)(considering whether the word "parent" in Wis. Stat. § 767.245 includes persons standing *in loco parentis*); *McManus v. Hinney*, 31 Wis. 2d 333, 143 N.W.2d 1 (1966); *In Interest of L.L. v. Circuit Ct. of Washington County*, 90 Wis. 2d 585, 596, 280 N.W.2d 343 (Ct. App. 1979)(describing the state's authority to supervise children during school hours as its position *in loco parentis*); *Fuerst v. Fuerst*, 93 Wis. 2d 121, 286 N.W.2d 861 (Ct. App. 1979).

¶ 53. We have described the *in loco parentis* relationship in this manner:

> A person stands *in loco parentis* to a minor child if he has assumed the status and obligation of a parent without a formal adoption. Whether or not this relationship exists is a matter of intent to be deduced from the facts of a particular case. In determining whether a person stands *in loco parentis*, factual considerations may include the children's ages, their dependence upon the person claimed to be *in loco parentis*, and whether such person in fact supports the children and exercises the duties and obligations of a natural parent.

*McManus*, 31 Wis. 2d at 337. In essence, an *in loco parentis* relationship is created when a person who is not a child's legal parent stands in the position of a parent towards the child.

¶ 54. The parental duty to control described by Restatement (Second) of Torts § 316 and Wis JI—Civil 1013 requires that parents, who by the nature of their relationship have the ability to supervise and control a child's conduct, take reasonable steps to control the child's behavior. *See Nieuwendorp*, 191 Wis. 2d at 474 (stating that parents had a duty to take reasonable steps to control their son's behavior). Persons who stand *in loco parentis* to a child have a similar authority and obligation to supervise and control the child's behavior. It is therefore reasonable to subject them to the standard of conduct set forth in § 316 and Wis JI—Civil 1013. We hold that a person who stands *in loco* parentis to a minor child may be held liable for failure to exercise ordinary care in controlling that child's conduct. If Bubner stood *in loco parentis* to Michael, Bubner's alleged failure to control Michael's conduct may be evaluated under the standard of conduct set forth in § 316 and Wis JI—Civil 1013.

### B. A CLAIM FOR NEGLIGENT FAILURE TO CONTROL MAY ALSO PROCEED ON THE THEORY THAT BUBNER VOLUNTARILY UNDERTOOK TO PROTECT TARA

¶ 55. The court of appeals recognized the Gritzners' second cause of action based not only on Bubner's duty to control Michael but also on Bubner's voluntary undertaking to protect Tara under the Restatement (Second) of Torts § 324A. *Gritzner*, 228 Wis. 2d at 551–52. We conclude that Bubner's alleged failure to supervise or control the children at his home

808

may also be evaluated under the standard of conduct in § 324A.

¶ 56. This court has adopted the theory of negligence set forth in the Restatement (Second) of Torts § 324A, Liability to Third Person for Negligent Performance of Undertaking. *See American Mut. Liab. Ins. Co. v. St. Paul Fire and Marine Ins. Co.*, 48 Wis. 2d 305, 313, 179 N.W.2d 864 (1970)(expressing agreement with the rule of law set forth in § 324A). Section 324A provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to a third person, or
>
> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

This rule does not require a contractual or legal obligation to provide services. *American Mut. Liab.*, 48 Wis. 2d at 313. Instead, this standard of conduct applies to anyone "who, having no duty to act, gratuitously undertakes to act and does so negligently." *Id.*

¶ 57. The Gritzners' complaint alleges that Bubner consented to Tara's presence on his property and that Tara's parents entrusted Tara to Bubner's care. If these facts are true, a reasonable jury could infer from them that Bubner voluntarily agreed to care for Tara while she was in his home without her par-

ents. The complaint also alleges that Bubner failed to supervise or control Michael despite his knowledge that there was a risk that Michael would engage in inappropriate sexual acts with Tara if left unsupervised. Taken together, all of these allegations could reasonably support the conclusion that Bubner "under[took]. . .to render services to [Tara's parents] which [Bubner] should recognize as necessary for the protection of [Tara]. . .," and that Bubner should be liable to Tara "for physical harm resulting from his failure to exercise reasonable care to protect his undertaking," because Bubner's failure to exercise reasonable care increased the risk of physical harm to Tara. We therefore affirm the court of appeals' holding that Bubner's alleged failure to control Michael's conduct may be evaluated under the principles of § 324A.[14]

---

[14] The Gritzners urge us to hold that *Shannon* provides an additional basis for imposing liability on Bubner for failure to control Michael's conduct. *See also Gritzner v. Michael R.*, 228 Wis. 2d 541, 548, 598 N.W.2d 282 (Ct. App. 1999)(citing *Shannon v. Shannon*, 150 Wis. 2d 434, 443–44, 442 N.W.2d 25 (1989)). We decline to do so because evaluating Bubner's liability under the principles of *Shannon* would allow liability to be imposed not only for failure to control but also for failure to warn.

*Shannon* holds that a possessor of land "fails to exercise ordinary care when, without intending to do any wrong, he does an act or omits a precaution under circumstances in which a person of ordinary intelligence and prudence ought reasonably to foresee that such act or omission will subject him or his property, or the person or property of another, to an unreasonable risk of injury or damage." *Shannon*, 150 Wis. 2d at 443–44. Thus, *Shannon* states a broad standard of conduct under which liability could be imposed not only for Bubner's failure to control Michael's conduct but also for his failure to warn Tara or her

810

## C. PUBLIC POLICY DOES NOT PRECLUDE THE GRITZNERS' CLAIM BASED ON BUBNER'S FAILURE TO CONTROL MICHAEL

¶ 58. We hold that the Gritzners' claim for negligent failure to control may proceed to trial on two theories: (1) under the Restatement (Second) of Torts § 316 and Wis JI—Civil 1013, together with the *in loco parentis* doctrine, Bubner had a duty to exercise reasonable care to control Michael's conduct; and (2) under the Restatement (Second) of Torts § 324A, Bubner voluntarily agreed to take care of Tara in his home and then failed to take reasonable care to supervise and control Michael's conduct for Tara's protection. We conclude that these legal theories provide narrow, well-defined guidelines for evaluating Bubner's alleged negligent failure to control Michael's conduct.

¶ 59. Bubner argues that the Gritzners' claim for negligent failure to control cannot succeed under either of these theories, or any other theory.

¶ 60. First, Bubner contends that the Gritzners cannot establish liability for negligent failure to control under either of the theories we have recognized because the complaint does not specifically allege that he stood *in loco parentis* to Michael or that he entered into an express agreement to supervise or control Michael's conduct. Bubner cite *Kara B. v. Dane County*, 205 Wis. 2d 140, 555 N.W.2d 630 (1996); *McNeese*, 174 Wis. 2d at 633–34; *Estate of Becker v. Olson*, 218 Wis. 2d 12, 15–18, 579 N.W.2d 810 (Ct. App. 1998); *Kramschuster v. Shawn E.*, 211 Wis. 2d 699, 707–708, 565

---

parents about Michael. Having already determined that public policy concerns preclude liability for failure to warn, we hold that liability under *Shannon* is precluded under the circumstances of this case.

N.W.2d 581 (Ct. App. 1997); and *Zelco v. Integrity Mutual Insurance Co.*, 190 Wis. 2d 74, 78, 527 N.W.2d 357 (Ct. App. 1994), as standing for the principle that "Wisconsin courts have historically required an agreement to assume responsibility before a duty to protect is found." (Br. of Defs.-Resp'ts-Pet'rs at 9.)

¶ 61. None of the cases cited by Bubner holds that Wisconsin courts require the existence of a formal legal agreement to assume responsibility before imposing a duty to protect a third party.[15] *See Gritzner*, 228

---

[15] *Zelco* holds that a social host does not breach the duty to exercise ordinary care by failing to protect one guest who voluntarily confronts another guest. *Zelco v. Integrity Mut. Ins. Co.*, 190 Wis. 2d 74, 78–79, 527 N.W.2d 357 (Ct. App. 1994). There were no allegations in *Zelco* that the social host was in a parental or supervisory relationship with her guests.

Neither *Becker* nor *Kramschuster* is inconsistent with our holding that if Bubner was acting *in loco parentis* for Michael or had voluntarily agreed to take care of Tara, he had a duty to exercise ordinary care to control Michael's conduct. *Becker* reaffirmed *Zelco*'s holding but recognized that the defendant's failure to prevent her boyfriend from keeping a sawed-off shotgun in the bedroom closet of her home could constitute negligence. *Estate of Becker v. Olson*, 218 Wis. 2d 12, 18, 579 N.W.2d 810 (Ct. App. 1998). *Kramschuster* held that an adult hunter did not create an unreasonable risk of injury by failing to warn or supervise a twelve-year-old child when facts did not suggest that a duty of supervision was necessary. *Kramschuster v. Shawn E.*, 211 Wis. 2d 699, 707–708, 565 N.W.2d 581 (Ct. App. 1997).

*Kara B.* is entirely consistent with our holding in this case. In reaching its holding that a professional judgment standard rather than a deliberate indifference standard should be used to evaluate whether government officials violated foster children's rights to a safe and secure placement, the *Kara B.* court noted government officials who place children in foster care are acting

Wis. 2d at 553 (explaining that none of the cases cited by Bubner requires a legal relationship). As already discussed, liability for negligence in Wisconsin depends not so much on whether there is some legal relationship that imposes a duty of care, but on whether a person's conduct was consistent with the duty to exercise ordinary care and whether liability is consistent with public policy.

¶ 62. Furthermore, under either of the legal theories we recognize, Bubner will only be held liable for negligent failure to control if there is some reasonable basis for concluding that he was aware of the need to protect Tara, and had assumed the responsibility and authority to control Michael for Tara's protection. The first legal theory we recognize, negligent failure to control under the Restatement (Second) of Torts § 316, will succeed only if the Gritzners can establish that Bubner stood *in loco parentis* to Michael, knew of the need to control Michael's conduct, and had the ability and opportunity to do so. Likewise, the claim for negligent failure to control under the Restatement (Second) of

in the place of the children's parents. *Kara B. v. Dane County*, 205 Wis. 2d 140, 159–60, 555 N.W.2d 630 (1996).

Finally, the holding in *McNeese* is consistent with our holding in this case. The court of appeals determined that a woman who picked up a child for school did not breach the duty to exercise reasonable care by parking across the street from the child's home. *McNeese v. Pier*, 174 Wis. 2d 624, 631–36, 497 N.W.2d 124 (1993). The court noted that simply being at the scene of the accident was not negligence and stated that there is no general duty to protect others from hazardous situations. *Id.* at 632. However, the court closely examined the facts to determine whether under the particular circumstances the driver's failure to escort the child across the street was a breach of the duty of ordinary care. *Id.* at 632–35. This approach is consistent with our approach in the case at hand.

Torts § 324A is well defined; it will not succeed unless Bubner voluntarily agreed to take care of Tara and failed to take reasonable care to do so.

¶ 63. Bubner also contends that he should not be subject to a duty to exercise ordinary care to control Michael's conduct because non-parents who are prosecuted for physical abuse of a child may not rely on the parental discipline privilege set forth in Wis. Stat. § 939.45(5). *State v. Dodd*, 185 Wis. 2d 560, 567, 518 N.W.2d 300 (Ct. App. 1994). This argument seems to assume that to avoid liability under the theories we recognize in this case, Bubner might need to engage in physical abuse of a child. We reject this assumption. In order to avoid liability for negligent failure to control a minor child, an adult need only exercise ordinary care to control the child. In the case at hand, Bubner's mere presence in the room where the children were playing may have been sufficient to prevent Michael's alleged inappropriate sexual conduct. Had any physical restraint been necessary, it seems likely that it could have been accomplished without engaging in physical abuse.

¶ 64. Bubner also argues that several public policy considerations preclude liability. Bubner first argues that, like the failure to warn claim, the claim based on negligent failure to control should be barred because allowing recovery would enter a field that has no just or sensible stopping point. We reject this argument because, unlike the claim for negligent failure to warn, the claim for negligent failure to control that we have recognized is very narrow and well defined.

¶ 65. In both of the theories of negligence that we recognize in this case, the basis for liability and the group of persons who may become liable are narrowly defined. Under the Restatement (Second) of Torts § 316

and the doctrine of *in loco parentis*, liability is imposed only on parents or people who are in a parent-like relationship with a child; who have the ability to control the child; who know or should know that it is necessary to control the child; and who know or should know that they have the opportunity to control the child. Under the Restatement (Second) of Torts § 324A, only people who voluntarily undertake to provide services and then fail to exercise ordinary care in the performance of those services may be held liable for negligent failure to control. Thus, both theories provide just and sensible guidelines for limiting liability.

¶ 66. Moreover, imposing liability for failure to control is fundamentally different from imposing liability for failure to warn because liability for failure to control does not require the issuance of broad warnings to all of a child's peers. Thus, the failure to control claim does not compel private parties to choose between stigmatizing children and facing potential liability for negligence. Instead, parents and persons *in loco parentis* are charged with taking reasonable steps to supervise and control a child as necessary for the safety of others. Although some parties may determine that issuing warnings is an effective method of fulfilling this obligation, a party will not be held liable for failing to issue any warnings. We therefore hold that the public policy concerns that should preclude liability for failure to warn do not preclude liability for failure to control.

¶ 67. Next, Bubner argues that liability is barred because recovery would place too unreasonable a burden on the negligent tortfeasor. The cause of action we recognize is narrowly tailored to avoid any such unreasonable burden. If the plaintiffs proceed under the first theory, they will succeed only if they can establish that

Bubner (1) stood *in loco parentis* to Michael, (2) had the ability and opportunity to control Michael, (3) knew or should have known of the need to control Michael, and (4) failed to exercise ordinary care to control Michael. We believe that imposing liability under these circumstances is consistent with reasonable expectations. Similarly, if the plaintiffs proceed under the second theory, they will not succeed unless Bubner agreed to care for Tara while she was in his home and then failed to exercise ordinary care to protect her from Michael. This burden is also a reasonable one.

¶ 68. In addition, Bubner contends that recovery should be barred because the injury is too wholly out of proportion to the culpability of the negligent tortfeasor. We cannot agree. The complaint alleges that Bubner was aware that Michael might abuse Tara if the children were left unsupervised, that he nevertheless left the children unsupervised, and that Tara was abused as a result. Assuming, as we must, that these allegations are true, we cannot conclude that the injury is out of proportion to Bubner's culpability.

¶ 69. Finally, Bubner urges that a bright-line rule precluding liability in the absence of a formal legal relationship would provide better protection for children. Bubner asserts that recognizing liability for negligent failure to control under the facts alleged in the complaint will cause parents to become confused about who has the duty to control and protect children. Parents therefore could become less vigilant in protecting and controlling their own children. We do not agree. Holding adults to the well-defined, reasonable standards of conduct we recognize in this case will provide increased protection for children.

## VII. CONCLUSION

¶ 70. In conclusion, we would hold that under the circumstances of this case, the Gritzners' claim against Bubner for negligent failure to warn them about Michael must be dismissed because it is precluded by public policy considerations. However, the Gritzners' claim against Bubner for negligent failure to control Michael's conduct may proceed on two grounds.

¶ 71. Under the first theory we recognize, Bubner may be held liable for negligent failure to control if (1) he stood *in loco parentis to* Michael, (2) he knew or had reason to know that he had the ability to control Michael, (3) he knew or had reason to know of the necessity and opportunity for exercising his control over Michael, and (4) he nevertheless failed to exercise reasonable care to control Michael's conduct so as to prevent Michael from intentionally harming Tara or conducting himself so as to create an unreasonable risk of bodily harm to Tara. Restatement (Second) of Torts § 316.

¶ 72. Under the second theory we recognize, Bubner may be held liable to Tara for the physical harm she suffered because of Bubner's alleged negligent failure to control Michael if (1) Bubner undertook, gratuitously or for consideration, to render services to Tara's parents which he should have recognized as necessary for the protection of Tara, (2) he failed to exercise reasonable care to protect Tara, and (3) his failure to exercise reasonable care increased the risk of harm to Tara, or he undertook to perform a duty owed by Tara's parents to Tara, or the harm was suffered because of Tara's or her parents' reliance upon

Bubner's undertaking. Restatement (Second) of Torts § 324A.

¶ 73. For these reasons, the justices who join this lead opinion would affirm the decision of the court of appeals on both counts. We would hold that the Gritzners' claim for negligent failure to warn is barred by public policy considerations as a matter of law. At the same time, we would permit the Gritzners' claim for negligent failure to control to proceed under the two theories described above. However, the lead opinion is not the opinion of the court with respect to the claim for negligent failure to warn. It is only the opinion of the court with respect to the claim for negligent failure to control. *See* concurrence at ¶ 86.

¶ 74. Accordingly, the cause is remanded to the circuit court for further proceedings on both of the Gritzners' claims against Roger Bubner.

*By the Court.*—The decision of the court of appeals is affirmed in part and reversed in part, and the cause is remanded.

¶ 75. SHIRLEY S. ABRAHAMSON, CHIEF JUSTICE *(concurring)*. I agree with Part VI of the lead opinion that the Gritzners' complaint states a claim against Roger Bubner for negligent failure to control Michael's conduct. The Gritzners' complaint also states a claim against Roger Bubner for negligent failure to warn Tara's parents. But, in contrast to the lead opinion, I would not have this court conclude, after applying public policy considerations, "that the Gritzners' claim for negligent failure to warn is barred as a matter of law." Lead op. at ¶ 44. I conclude that the circuit court, not this court, should first apply public policy factors after a full factual resolution. I would therefore not

dismiss the claim for negligent failure to warn. I would remand the cause on both claims.

¶ 76. As the lead opinion explains, every person has a duty to use ordinary care in all of his or her activities, and a person is negligent when that person fails to exercise ordinary care. In Wisconsin a duty to use ordinary care is established whenever it is foreseeable that a person's act or failure to act might cause harm to some other person. A person is not using ordinary care and is negligent if the person fails to do something that a reasonable person would recognize as creating an unreasonable risk of injury to another. Lead op. at ¶¶ 20, 22, 23, 24. Failure to warn, depending on the circumstances, may be a breach of the duty of ordinary care.

¶ 77. The facts stated in this complaint, if proved, may constitute a claim against Bubner for negligent failure to warn.[1] Under the alleged facts, it was foreseeable that Bubner's failure to warn might cause harm to Tara. A reasonable person would have recognized that Bubner's failure to warn Tara's parents created an unreasonable risk of injury to Tara.[2] This conclusion comports with our case law that recognizes

---

[1] The lead opinion recognizes that a number of states have allowed a claim for negligent failure to warn in cases with circumstances similar to those in the present case. *See* lead op. at ¶ 43, n.12.

*See also Doe v. Batson*, 523 S.E.2d 909 (S.C. Ct. App. 1999) (under facts similar to those in this case, court allows a negligent failure to warn claim against the mother of an adult son who sexually assaulted girls).

[2] In this case, unlike in *Kelli T-G v. Charland*, 198 Wis. 2d 123, 129, 542 N.W.2d 175 (Ct. App. 1995), it is undisputed that the defendant had a special relationship with Michael and Tara. Both had been entrusted to his care.

that a failure to warn may constitute negligence under numerous, diverse circumstances.[3]

¶ 78. I disagree with Part V of the lead opinion that states that "*under the circumstances of this case*, liability for failure to warn is barred by public policy." Lead op. at ¶ 43 (emphasis added). The lead opinion goes on to state that it "would not foreclose the possibility that *under different circumstances* a plaintiff could recover based on negligent failure to warn about a known risk of sexual abuse." Lead op. at ¶ 43 (emphasis added). The lead opinion does not tell us what these different circumstances might be.

¶ 79. Because the lead opinion stresses the *circumstances of this case*, I examine the circumstances of this case.

¶ 80. This case is here on a motion to dismiss. The complaint in this case alleges that Bubner, who

---

[3] For example, owners and occupiers of land may be found negligent if they fail to warn firefighters of hidden perils on their property. *See Haubolt v. Union Carbide Corp.*, 160 Wis. 2d 662, 674–76, 467 N.W.2d 508 (1991); *Wright v. Coleman*, 148 Wis. 2d 897, 436 N.W.2d 864 (1989); *Clark v. Corby*, 75 Wis. 2d 292, 298, 249 N.W.2d 567 (1977).

Also, if a passenger in an automobile sees a danger and it is apparent that the driver does not see the danger, the passenger's failure to warn the driver constitutes negligence. *See Teas v. Eisenlord*, 215 Wis. 455, 253 N.W. 795 (1934); *Delmore v. American Fam. Mut. Ins. Co.*, 118 Wis. 2d 510, 524–25, 348 N.W.2d 151 (1984) (discussing *Teas*).

A psychotherapist may be negligent for failure to warn a patient about a medication's effect on driving, if it was foreseeable that an accident could result causing harm to the patient or third persons. *See Schuster v. Alternberg*, 144 Wis. 2d 223, 232–33, 424 N.W.2d 159 (1988). *See also State v. Agacki*, 226 Wis. 2d 349, 358–59, 595 N.W.2d 31 (Ct. App. 1999) (recognizing that psychotherapists have duty to warn in certain cases).

was entrusted with the care of Michael and Tara, "knew that [Michael] had engaged in inappropriate sexual acts with another child or other children," that Bubner "knew or should have known that Michael had a propensity to engage in inappropriate sexual acts with female children," and that Bubner "failed to warn the parents of [Tara] of [Michael's] propensity."

¶ 81. The lead opinion repeatedly emphasizes that its decision to preclude liability for negligent failure to warn on public policy factors is based on the circumstances of this case and that under different circumstances a plaintiff might recover damages based on negligent failure to warn about a known risk of sexual abuse. Yet we know very little of the circumstances and facts of this case. We do not know, for example, about Michael's prior "inappropriate sexual acts" with female children, or how many victims were involved. We do not know whether Michael was adjudged a delinquent. Lead op. at ¶ 37. We do not know whether Michael's previous inappropriate sexual act or acts were the subject of any juvenile court proceedings. Lead op. at n.5.

¶ 82. The lead opinion concludes that "the facts are not complex," lead op. at ¶ 26, and therefore it may determine before trial whether public policy considerations preclude liability.

¶ 83. Public policy considerations should not, I believe, be considered at the motion to dismiss stage in this case. Any public policy decision should await the resolution of the facts and circumstances that the lead opinion considers so important. Indeed, it is usually better practice to require a full factual resolution before a court applies the public policy factors. Lead op. at ¶ 26.[4]

---

[4] *See Sawyer v. Midelfort*, 227 Wis. 2d 124, 141, 595 N.W.2d 423 (1999); *Bowen v. Lumbermens Mut. Cas. Co.*, 183 Wis. 2d

¶ 84. According to the lead opinion, this case is going back to the circuit court on the negligent failure to control claim. By waiting to decide the public policy considerations regarding the negligent failure to warn issue after full factual resolution, the court would not be delaying resolution of the dispute or increasing the expenses of litigation.

¶ 85. For the reasons stated, I would not dismiss the claim for negligent failure to warn. I conclude that the public policy factors should be applied first by the circuit court after a full factual resolution.

¶ 86. I am authorized to state that Justices WILLIAM A. BABLITCH, ANN WALSH BRADLEY, N. PATRICK CROOKS, and DIANE S. SYKES join this concurring opinion. Accordingly this concurrence is the opinion of the court on the issue of negligent failure to warn and the lead opinion is the opinion of the court on the issue of negligent failure to control Michael's conduct. Thus the cause is remanded to the circuit court for further proceedings on both of the Gritzners' claims against Roger Bubner.

627, 754, 517 N.W.2d 432 (1994); *Schuster v. Alternberg*, 144 Wis. 2d 223, 241, 424 N.W.2d 159 (1988); *Coffey v. City of Milwaukee*, 74 Wis. 2d 526, 542, 247 N.W.2d 132 (1976); *Boles v. Milwaukee Cty.*, 150 Wis. 2d 801, 818, 443 N.W.2d 679 (Ct. App. 1989).